## THE STATE OF MISSOURI, Respondent, v. GEORGE V. OLIPHANT, Appellant.

**Kansas City Court of Appeals, January 6, 1908.**

1. **LOCAL OPTION: Result of Election: Publication: Record.** The record of the county court relating to the adoption of the local option law need not show a return of the publication of the result where it shows the publication was ordered, and the burden to show a failure of such publication is upon the defendant.

2. **CRIMINAL LAW: Witnesses: Defendant: Impeaching: Former Conviction.** Where a defendant offers himself as a witness in his own behalf he may be contradicted and impeached as any other witness and may be cross-examined as to his former conviction on a similar offense even in another State.

3. ———: ———: ———: **Cross-Examination: Exception: Appellate Practice.** Though it may be improper to cross-examine a defendant as to his wife owning the business he runs, yet a mere objection without an exception will not bring such error up for review.

4. ———: ———: ———: **Impeachment: Moral Character.** In this State a defendant offering himself as a witness in his own behalf may be impeached as to his general moral reputation and his impeachment need not be confined to his reputation for truth and veracity but may extend to his reputation as a violator of the law.

5. ———: ———: **Detective: Credibility: Instructions: Statute.** Under the statute the court in its instructions cannot comment upon the evidence, but may lay down general rules to guide the jury in weighing the evidence and the credibility of the witnesses; but it is error to tell the jury that it should receive with the greatest "caution and distrust" the testimony of a detective. [State v. Fullerton, 90 Mo. App. 411, 415, overruled.]

Appeal from Harrison Circuit Court.—*Hon. Joshua W. Alexander*, Special Judge.

AFFIRMED.

*J. C. Wilson* and *Barlow & Barlow* for appellant.

(1)     The statute requires that a notice of the election shall be published in a specified manner be-

fore a legal election can be held. Sec. 3029. The entire record of the county court, certified by the county clerk, was offered in evidence by the defendant. It fails to show any publication of the notice, nor was there any other proof offered showing such notice. In all of the cases heretofore passed upon by the appellate courts of this State, involving the question, there was full and ample proof *aliunde* of the publication of the notice. State v. Hutton, 39 Mo. App. 417; State v. Dugan, 110 Mo. 145; Gaston v. Lankin, 115 Mo. 32; Warrensburg v. McHugh, 122 Mo. 652; Waters v. School Dist., 59 Mo. App. 589. (2) Though such facts exist, yet if their existence is not shown in the record, the proceedings are *coram non judice*. Corrigan v. Morris, 43 Mo. App. 456; Haggard v. Railroad, 63 Mo. 302; State ex rel. v. Court, 66 Mo. App. 96; Langford v. Few, 146 Mo. 142-154; Reed v. Lowe, 163 Mo. 533; Cummings v. Brown, 181 Mo. 711; Bick v. Tanzey, 181 Mo. 515. (3) A recital of the jurisdictional facts is necessary to the validity of the proceedings and to the legal adoption of the law. State ex rel. v. Bird, 108 Mo. App. 163; State ex rel. v. Baldwin, 109 Mo. App. 573. (4) The rule for which we are contending had been enforced and illustrated in a number of recent cases involving the validity of the proceeding of inferior tribunals exercising special statutory powers. Thornbury v. School Dist., 175 Mo. 12; Pace v. Shoe Co., 103 Mo. App. 662; State ex rel. v. Wilson, 99 Mo. App. 675; Tarkio v. Clark, 186 Mo. 285; Patchin v. Durritt, 116 Mo. App. 437; 1 Black on Judg. (2 Ed.), sec. 282; State ex rel. v. Cooper Co. Ct., 66 Mo. App. 96; State ex rel. v. Seibert, 97 Mo. App. 212. (5) The statute requires that a notice of the election shall be published in a specific manner before a legal election can be held. R. S. 1899, sec. 3029; Kelly's Crim. Law (Ed. 1892), secs. 1084-5; State v. Searcy, 39 Mo. App. 393; State v. Hutton, 39 Mo. App. 410. (6) It was not only necessary to al-

lege in the information that the law was adopted and in force in Harrison county, Missouri, but it is also necessary to prove the same. R. S. 1899, sec. 3031; State v. Makin, 41 Mo. App. 99; State v. Prather, 41 Mo. App. 451; Rousey v. Wood, 47 Mo. App. 465; State v. Macy, 72 Mo. App. 431; State v. Hays, 78 Mo. 600; State v. Cleveland, 80 Mo. 108; Hopkins v. Railroad, 79 Mo. 98; Rousey v. Wood, 57 Mo. App. 650.     (7)     The State's cross-examination of the defendant was a reversible error. R. S. 1899, sec. 2637; Laws 1905, p. 307, sec. 4655A; State v. Bulla, 89 Mo. 595; State v. Turner, 110 Mo. 196; State v. Fullerton, 90 Mo. App. 415; State v. Chamberlain, 89 Mo. 129; State v. Rugan, 68 Mo. 214; State v. McGraw, 74 Mo. 573; State v. Brent, 100 Mo. 531; Krueger v. Railroad, 94 Mo. App. 458; State v. Siegenthaler, 121 Mo. App. 510; Shoe Company v. Hillig, 70 Mo. App. 301; Gunther v. Roy, 74 Mo. App. 597.     (8)     The expressions of the court on a material issue in the case, in the hearing of the jury, was highly prejudicial to the defendant and constituted reversible error.     Rose v. Kansas City, 102 S. W. 578; State v. Turner, 102 S. W. 599; Wright v. Richmond, 21 Mo. App. 81; Thompson on Trials, sec. 219; Schierbaum v. Schemme, 157 Mo. 22; Bailey v. Kansas City, 189 Mo. 503; Wharton, Crim. Evidence, sec. 440; State v. Fullerton, 90 Mo. App. 415, and cases cited.

*W. H. Zeazenby* for respondent.

(1)     The State makes a prima-facie case of the adoption of the local option law by introducing the records of the county court showing the result of the election as spread upon the records of the county court in compliance with section 1 of the statute and by proving that the subsequent publication was made as required by the statute.     State v. Searcy, 39 Mo. App. l. c. 407.     (2)     The court is not bound to instruct the jury that the testimony of detectives or "spotters" is

to be received with great caution and distrust. State v. Hoxsie, 15 R. I. 1; State v. Bennett, 40 S. C. 308; State v. Keys, 4 Kan. App. 14; Potter v. State, 92 Ala. 37; Hronek v. People, 134 Ill. 139, 8 L. R. A. 839.

JOHNSON, J.—On information of the prosecuting attorney, defendant was tried and convicted in the circuit court of Harrison county on a charge of violating the local option law and was fined eight hundred dollars. He appealed to this court and advances three grounds on which he relies for a reversal of the judgment. First, that the record shows the local option law was not legally adopted in Harrison county prior to the commission of the offense charged; second, that incompetent evidence prejudicial to defendant was admitted over his objection; and, third, that a cautionary instruction asked by defendant and refused by the court should have been given.

Following the statement in the information that the local option law was adopted in Harrison county on the 17th day of January, 1900, it is alleged therein that on or about the 1st day of April, 1903, defendant unlawfully sold certain intoxicating liquors in said county. At the time stated, defendant was operating a drug store and it appears from the evidence offered by the State that he sold two glasses of whiskey which were drunk by the purchasers behind the prescription case and paid for by one of them. The witness who testified to making the purchase admitted on cross-examination that in a very short time afterward he was employed by the prosecuting attorney as a detective to obtain evidence of illegal sales of intoxicating liquors by druggists in that county and for his services, which covered a period of thirty-two days, was paid $500 by the attorney and, in addition, allowed and paid $35 for expenses. Further, he admitted that on three occasions, once in Harrison county and twice in Oklahoma,

he was prosecuted for the offense of common assault and in each instance entered a plea of guilty. He was the only witness who testified to the illegal sale. Defendant denied making the sale and testified that at the time it was alleged to have occurred he was in Osceola, Iowa, where formerly he had been in the drug business and where he still had some business interests. He was cross-examined in part, as follows:

"Q. You say you removed from Osceola down here? A. Yes, sir.

"Q. You were in business up there were you? A. Yes, sir.

"Q. You were found guilty of selling liquor up there were you not? (Objection.) Tell the jury now if you were not convicted for selling liquor illegally at Osceola, Iowa, in 1899? A. I answered that question once before, I said no; I plead guilty.

"Q. Oh, you plead guilty? A. Yes, sir.

"Q. How many times did you plead guilty, Mr. Oliphant? A. Twice.

"Q. You were in the drug business up there, were you? A. I was in the drug business a short time, about ten months.

"Q. I will ask you if it is not a fact that the court enjoined you from further dealing in liquor of any kind whatsoever in the Third Judicial Circuit of the State of Iowa, on account of the fact of your having been a violator of the liquor laws of that State? (Objection.) A. Yes, sir, that is true.

"Q. When did you say you moved down here? A. I came here in September.

"Q. What year? A. 1899.

"Q. When you came here the indictments were pending against you at Osceola? (Objection.)

"Q. You came here in September, 1899? A. Yes, sir.

"Q. You say you are in the drug business down here? A. I am working in a drugstore.

"Q. Whose drugstore? A. It is known as the Bethany Drug Company.

"Q. Who is the Bethany Drug Company? A. Nettie D. Oliphant was at that time and is.

"Q. And is now? A. Yes, sir.

"Q. And has been all the time? A. Yes, sir.

"Q. Who is Nettie D. Oliphant? A. She is my wife, I guess.

"Q. Your wife? A. Yes, sir.

"Q. Your wife owns the drugstore? A. Yes, sir.

"Q. Did she own it at that time? A. Yes, sir.

"Q. And you are working for your wife? A. Yes, sir.

"Q. On wages? A. Yes, sir."

In rebuttal, the State introduced five witnesses who testified that defendant's general reputation for morality was bad, but on cross-examination, each witness admitted that this reputation rested solely on the belief generally entertained in the community that defendant was a persistent violator of the local option law. A fair example of the character of testimony elicited by the State is found in the following extracts from the cross-examination of one of the witnesses:

"Q. Well, who did you hear talking about this man's reputation for morality, about him individually, his moral character? A. I want to confine it to his business. (Defendant objects.)

"By the Court: What do you man by that? A. I mean that it was the business that he was doing that I was talking about.

"Q. The business he was doing? A. Yes, sir.

"By the Court: I suppose a man's moral character is made up from what he does, find out further.

"Q. You are not now making the statement that

128 App.—17

you have heard anybody say anything about his moral character, simply, it is the business he is in? Instead of his moral character? A. It is his drugstore, yes, sir; it is the business he was doing—his drugstore.

"By the Court: His character, you say, was made up from that? A. I said what I heard talked about his character was made up from that.

"Q. About his character? A. Yes, sir. . . .

"Q. Just simply because he was in the drug business? A. Yes, sir.

"By the Court: Was that it, simply because he was a druggist? A. No, it was the whiskey he sold.

"Q. That was it, suspected? A. Yes, sir.

"By the Court: Was it simply selling whiskey? A. Well, that was the line of business that was talked about.

"By the Court: Under the law, a druggist may sell whiskey? A. Well, illegally.

"Q. Did Dr. Caruthers say in that conversation he knew he was selling whiskey illegally? A. No sir.

"Q. Just suspected he was? A. Yes, sir.

"Q. Just a suspicion? A. Yes, sir. . . .

"Q. Did not pretend to know that they were sell-. ing liquor illegally? A. No, only just general talk.

"Q. A rumor? A. Yes, sir.

"Q. And from that, you think his reputation for morality is bad? A. If he is selling liquor in the way they think he was. . . . .

"Q. That is the only sort of talk you ever heard against Oliphant? A. Yes, sir; that was about it.

"Q. It was general talk against other druggists as well as him? A. Against a couple of others.

"Q. Three in this town? A. Yes, sir.

"Q. Did you ever hear anything else talked about Oliphant, his moral character, except what you have

stated here, in this line; about the suspicion of selling liquor? A. That is here at this time?

"Q. Yes. A. No, I don't think I ever did."

Defendant moved to strike out the testimony of the witness "for the reason he shows by his evidence that he had no knowledge of the general moral character of the defendant, in this community; that his knowledge only grew out of the suspicion of individuals against his drugstore, against his selling liquor; that it is not founded on the facts or not claimed to be founded on any facts, and is, therefore, incompetent and immaterial." The court overruled the motion and observed "I have always understood that reputation was made up by what other people think of us, while character is what we, in fact, are. He says his general reputation for morality is bad—but that relates to his being a violator of the law of the illegal sale of whiskey as a druggist."

The State offered in evidence the record of the county court showing the adoption of the local option law in Harrison county and the order for the publication of the result of the election for four consecutive weeks in the newspaper "in which the notice of said election was published." Defendant offered the record of all the proceedings relating to the adoption of the law for the purpose of showing that it contained no recital of the facts, if they existed, that the notices of the election and of the result thereof were published for the time and in the manner prescribed by statute and by order of the court. The State did not attempt to prove by other evidence that these notices, in fact, were published nor did the defendant offer evidence to show they were not published. It is his position that the fact of the publications being jurisdictional must be made to appear on the face of the record of the proceedings kept by the county court and that its omission therefrom, in

the present instance, is fatal to the validity of the proceedings.

In State v. Hutton, 39 Mo. App. 410, this precise point was determined adversely to the contention of defendant by the St. Louis Court of Appeals, speaking through Judge Thompson.    It was held that since the statute makes no provision for any form of proof of publication of the notices being made to the county court and entered of record it is not essential to the validity of the    proceedings that the fact of the    publications should be entered of record.    It is the fact of notice which the statute requires and where, as here, the record of the county court discloses that the notices were ordered to be published in the manner prescribed by statute, it will be presumed in the absence of a contrary showing that they were published as ordered.    Such was the view we entertained in the recent case of State v. Forman, 121 Mo. App. 502, where we said:    "Nor do we regard that it was necessary for the State to show affirmatively as part of its case that notice of holding the election was given.    If the defense should show that no notice was given, the election would, of course be void, but though it is so claimed, such showing was not made."    The recitals of the record of the county court offered in evidence threw the burden on defendant of adducing evidence to show that the notices were not published and, as he raised no such issue in the evidence offered by him, he has failed in his proof.

Next it is insisted that the court erred in permitting the attorney for the State to cross-examine defendant relative to his conviction in Iowa for offenses against the liquor laws of that State.    It is true that under the provisions of section 2637, Revised Statutes 1899, a person on trial under a criminal charge who testifies in his own behalf may be cross-examined only "as to any matter referred to in his examination in chief" but it is provided in that section that such wit-

ness "may be contradicted and impeached as any other witness in the case." And in section 4680, Revised Statutes 1899, enacted in 1895, it is provided that "any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." We think the latter section was intended to apply to a defendant who takes the witness stand in his own behalf as well as to a witness introduced in an action to which he is not a party. It was proper for the State to cross-examine defendant on the subject of his former convictions for the purpose of impeaching his credibility as a witness.

Objection now is made to that part of the cross-examination of defendant which brought out the fact that he was conducting the business in his wife's name, but we cannot entertain the point for the reason that no objection was interposed at the time of the examination. It is well settled that the action of the trial court in permitting a defendant testifying in his own behalf to be cross-examined on matters not referred to in the examination in chief will not be reviewed unless objections were made and exceptions saved at the time. [State v. Turner, 110 Mo. 196.]

We do not agree with counsel for defendant that error was committed by the learned trial judge in the admission of evidence offered by the State for the purpose of impeaching defendant. The gist of the testimony of the witnesses is that defendant bore the reputation in the community of a violator of the local option law. The rule is well settled in this State in a long line of decisions that, in the impeachment of a witness, the inquiry need not be confined to the trait of character in issue, but may be extended to general moral

character.    That is to say, the reputation of a witness for truth and veracity, which is the real issue, may be good and yet, for the purpose of impeaching his credibility, it may be shown that his general reputation respecting other traits of character is bad.    This is on the theory that the jury is entitled to draw the inference from the fact of general immorality that the witness is not a truthful person.    The great weight of authority in other jurisdictions supports the contrary rule that impeaching evidence should be confined to the reputation of the witness for truth and veracity and the writer agrees with the individual opinion expressed by Judge Fox in State v. Pollard, 174 Mo. 607, that reason and logic are on the side of the latter rule.    The injustice of the rule followed in this State is strikingly illustrated in the facts of the present case.    Under the guise of impeaching defendant, the State was permitted to bolster a weak case by a mass of street gossip from which the jury easily might draw the inference that, as defendant had the reputation of selling liquor illicitly, in all probability, he was guilty of the specific offense charged, and his conviction, in all liklihood, resulted, in part at least, from the acceptance by the jury of the rankest kind of hearsay testimony.    The Supreme Court, however, in the case to which we have just referred, did not act on the individual views of Judge Fox, but followed in the wake of the former decisions of that tribunal.    Recently, in the case of State v. Beckner, 194 Mo. 281, that court in an opinion written by Judge GANTT placed a restriction on the scope of the rule, but did not repudiate it.    In that case, the defendant on trial for murder, testified in his own behalf.    Afterward, the prosecuting attorney called a number of witnesses to each of whom he propounded the question:    "Do you know the general reputation of the defendant for peace and quietness, or turbulence and violence in the neighborhood where he lives?"    After

an exhaustive discussion of the principles involved and a review of many authorities, the conclusion was reached that it was error to receive such testimony.    It was said "a character for violence or turbulence sheds no light on the credibility of the witness and such testimony was not admissible unless the defendant had first put his character for peace in issue," and further, that "it will be observed that the question propounded to the impeaching witness in this case did not involve his general reputation for truth and veracity nor his general reputation for immorality but was confined to the specific charge as to his reputation for being a violent and turbulent man.    This evidence, we think, was not directed to impeaching his character as a witness, but was direct evidence tending to impeach his character as a defendant only for turbulence and violence when he had not put his character in issue."    But the doctrine was reasserted that "when a defendant, under statutes like ours, is permitted to testify and he avails himself of his privilege, it is at once obvious that he occupies a dual position—that of witness and accused." And in his character of witness, he might be impeached as any other witness.    And, further, the doctrine first announced in State v. Shields, 13 Mo. 236, was reasserted that, in impeaching a witness, the inquiry may extend to his moral character generally, the rule being predicated "on the ground that the lack of moral principle evidenced by the practice of a particular vice affects his credibility."

Adherence to these principles compels us to hold that when a defendant offers himself as a witness, his credibility as a witness may be assailed by proof of the fact that he bears the reputation in the community of being guilty of offenses against the law analogous to that for which he is being tried.    A man may possess a violent and turbulent disposition and yet not break the law, and it is obvious that such infirmity

of temperament bears no relation to his character for truth and veracity. But, knowingly to violate the law is a thing no moral man would do. It is a vice, the practice of which under the doctrine under discussion, implies that the offender may not possess sufficient moral principle to testify to the truth, especially in a case where the truth may be against his interest. The objection must be ruled against the defendant.

Finally, it is argued that the court erred in refusing to give the following instruction asked by defendant: "The court instructs the jury that if they believe from the evidence that the witness, Samuel J. Cummings, was hired as an informant, detective, or decoy to make a purchase of intoxicating liquor of the defendant for the express purpose of indicting and prosecuting him for the unlawful sale of same, then the testimony of such witness should be received by the jury with the greatest caution and distrust." Section 2639, Revised Statutes 1899, provides "the court shall not, on the trial of the issue in any criminal case, sum up or comment on the evidence, or charge the jury as to matter of fact, unless requested to so do by the prosecuting attorney and the defendant or his counsel; but the court may instruct the jury in writing on any point of law arising in the cause." It is not inconsistent with the mandate of this statute for the court to give a general instruction in which the rules are stated by which the jury should be guided in weighing the evidence and in passing on the credibility of witnesses. But it is one thing to tell the jury that in determining the question of the credibility of a witness they may take into consideration his interest in the cause, bias, prejudice, etc., or the fact that he is a paid detective or informer, and it is another and quite different thing to instruct them that the testimony of a paid detective should be received with the greatest caution and distrust, or with any degree of caution. In the first men-

tioned class of instructions, the judge keeps strictly within the limits of the statute by doing nothing more than to give to the jury the rules of law by which they should be guided in solving controverted issues of fact, while in the latter, he invades the province of the jury by attempting to determine for them an issue purely of fact.    It hardly will be disputed that the question of the credibility of a witness is one of fact, not of law, and it will be found from an examination of the authorities cited by defendant which support the instruction under consideration that the practice of giving such instruction had its origin in jurisdictions where the judge is permitted to comment on the facts as well as to instruct on the law.    In the case of State v. Fullerton, 90 Mo. App. 411, l. c. 415, we fell into the error of approving an instruction of this character, evidently overlooking the fact that our statutory law prohibits the judge from commenting on the evidence.    We there said that "the rule has been approved in this State (State v. Walker, 98 Mo. 95) and elsewhere (Commonwealth v. Downing, 4 Gray 29; Preuit v. People, 5 Neb. 377; Anonymous, 17 Abbott's Prac. (N. Y.) 48)."    By referring to the case of State v. Walker, supra, it will be noted that the rule did not receive the sanction of the majority opinion, but was announced in the dissenting opinion of Judge Sherwood, and the force of the opinion in Commonwealth v. Downing, supra, cited in support of the text in Wharton on Criminal Evidence, section 440, is entirely destroyed by the later decision of the Supreme Court of Massachusetts in Commonwealth v. Foran, 110 Mass. 179.    It appears that prior to the latter decision a statute, similar to section 2639, supra, had been passed in Massachusetts providing that "the courts shall not charge juries with respect to matters of fact."    It was said by the court that this statute "prohibits the expression by the judge in his charge to the jury of his opinion as to the credibility of witnesses.

In the case at bar, a witness for the government testified that he bought liquor of the defendant for the purpose of testifying against him. The presiding judge instructed the jury that 'if the witness intending honestly to aid the government in breaking up a traffic forbidden by law, visited the place where the law was supposed to be violated for the purpose of obtaining evidence, it would not detract from the weight of his testimony in the opinion of the court.' We are of opinion that this instruction is erroneous whether the circumstances under which he obtained evidence and the motives under which he acted would or would not detract from the weight of his testimony was a question exclusively for the jury. Although an instruction was added that 'the whole matter was before the jury to give such weight to the testimony as they saw fit' yet the effect of the whole instruction was to throw the weight of the judge's opinion in the scales against the defendant. This was a violation of the rule prescribed by the statute."

So we think and it follows that that portion of our opinion in State v. Fullerton not in harmony with the views expressed must be overruled. Authorities in point are as follows: State v. Hoxie (R. I.), 22 Atl. 1059; State v. Bennett (S. C.), 18 S. E. 886; Potter v. State (Ala.), 9 So. 402; Hronek v. People (Ill.), 24 N. E. 861. The instruction was properly refused.

The judgment is affirmed. All concur.