STATE OF MISSOURI, Respondent, v. JAMES A. ROBERTSON, Appellant.

Springfield Court of Appeals, February 7, 1910.

1. CRIMINAL LAW: Validity of Local Option Election: Burden of Proof. In a criminal case, charging the violation of the Local Option Law, the burden of showing the invalidity of the adoption of local option, being a matter of defense, rests upon the defendant.

2. ———: ———: Sufficiency of Notice of Election: Presumption that Publication was Made as Ordered: Burden of Proof. The records of the county court relating to the adoption of the Local Option Law need not show proof that the notice was published; where they show that publication was ordered, the burden of showing the failure of such publication is then on defendant, the law presuming that the publication was made as ordered.

3. LOCAL OPTION: Validity of Election: Sufficiency of Publication of Notice. Where the county court, in addition to ordering the publication of the notice calling for a local option election to be published in one newspaper for four consecutive weeks, also orders the notice to be published in another paper for two weeks, such latter publication is proper under the additional notice provided for by the statute (R. S. 1899, sec. 3029), and, if the publication is made in conformity to the order, it is sufficient; for it is not required that the latter publication should also be made for four consecutive weeks.

4. CRIMINAL LAW: Violating Local Option Law: Druggist Filling Whisky Prescription Written by Himself as Physician. A physician, who is also a pharmacist and the owner of a drugstore, may sell intoxicating liquor on a prescription written by himself, and if it complies in form with section 3047 of the Revised Statutes 1899, it justifies the sale of intoxicating liquor by such physician as a pharmacist. But where the physician issues a bogus prescription for whisky, as a physician, and then fills it as a pharmacist, he is guilty of two crimes instead of one and ought to be amenable for both of them.

5. ———: ———: Druggist May Presume Liquor Prescription was Issued in Good Faith. Where a physician issues a prescription in regular form, it is authority for the druggist to sell the liquor therein prescribed, and such druggist has

a right to presume that such prescription was issued in good faith; but where the physician who issues the prescription, fills the same as a pharmacist, and there is evidence tending to show that the prescription was a sham, fabricated for the purpose of covering an illegal sale; then the question of good faith of such sale should be submitted to the jury under proper instruction.

6. ———: ———: ———: Not Required to Show That Prescription was Written at Request of Party Obtaining Liquor. It is not necessary, in the defense of a charge of violating the Local Option Law where the defendant justifies the sale under a prescription of a physician, to further show that the prescription was written at the request of the party who obtained the liquor.

Appeal from Christian Circuit Court.—*Hon. John T. Moore*, Judge.

REVERSED AND REMANDED.

*G. Purd Hays, S. E. Bronson* and *G. A. Watson* for appellant.

(1) By instruction number one given for the State, the court tells the jury to convict the defendant if they find he sold liquor within one year next before the filing of the information, and ignores his defense altogether. This is error. The sale was admitted. The question for the jury was whether the sale was made under a valid prescription, which was a complete bar to a conviction if so found. R. S. 1899, sec. 3047; State v. Bevans, 52 Mo. App. 130; Ex parte Swan, 96 Mo. 44; State v. Moore, 107 Mo. App. 78; State v. Russell, 99 Mo. App. 373. (2) Instruction number four given for the State is erroneous for the facts are altogether different from the facts in State v. Hensley, 94 Mo. App. 151, from which the instruction is copied. The uncontradicted evidence shows that defendant wrote and filled the prescription before the sale. State v. Pollard, 72 Mo. App. 230; State v. Hensley, 94 Mo. App. 151; State v. Russell, 99 Mo. App. 373. (3) In-

struction B, refused by the court, should have been given. It declared simply that the same person may write a prescription for intoxicating liquor as a physician and legally fill it as a pharmacist. This is undoubtedly the law. State v. Carnahan, 63 Mo. App. 244; State v. Pollard, 72 Mo. App. 230. (4) The court erred in overruling defendant's motion for a peremptory instruction at the close of the evidence; the record evidence offered by the State showing conclusively the Local Option Law was not in force in Christian county at the date of the alleged sale. State v. Mackon, 41 Mo. App. 99; State v. Prather, 41 Mo. App. 451; White v. Prine, 48 Mo. App. 113; State ex rel. v. Smith, 129 Mo. App. 57.

*Fred W. Barrett* for respondent.

(1) Instruction number four is amply justified by the evidence and the law. State v. Hensley, 94 Mo. App. 151. (2) The question of good faith in writing the prescription is not material. State v. Bevans, 52 Mo. App. 130. (3) An instruction on the Local Option Law was not asked by the defendant. In misdemeanor cases, the jury must have been misinstructed or the court must have refused legal instructions to work a reversal. State v. Mathews, 49 Mo. App. 237; State v. Baldwin, 56 Mo. App. 423; State v. O'Connor, 65 Mo. App. 324. (4) The local option is *prima facie* established by the State by proving the result of the election as spread on the records of the county court. It is not necessary to prove that the result was certified to by the clerk or that the court made a judicial finding. State v. Swearingen, 128 Mo. App. 605; State v. Hitchcock, 124 Mo. App. 101; State v. Mackin, 51 Mo. App. 299; State v. Searcy, 39 Mo. App. 393, 46 Mo. App. 421, 111 Mo. 236; State v. Rush, 118 S. W. 670.

NIXON, P. J.—This was a criminal action commenced by the prosecuting attorney of Christian county

by information charging that the appellant, contrary to the provisions of the Local Option Law then in force in said county, unlawfully sold one pint of whisky. Upon trial before a jury, appellant was found guilty and his punishment assessed at a fine of three hundred dollars. The case is here for our consideration on appeal.

Appellant assigns as grounds for reversal (1) that under the evidence the Local Option Law was not adopted in the county; and (2) that the trial court gave improper instructions and refused to give proper instructions.

I. The appellant was tried on the theory that the Local Option Law had been adopted in Christian county. There was no specific finding of such fact by the court but the instructions directing the jury as to the assessment of the punishment proceeded on that theory and we are authorized to believe that the court found that the Local Option Law was effective in the county at the time the offense was committed.

The validity of the Local Option Law in Christian county was upheld by the Supreme Court of this State in the case of State v. McCord, 207 Mo. 519, 106 S. W. 27. But in that case, the only question raised, discussed and passed upon by the court was as to the sufficiency of the petition upon which the county court ordered the election. Neither side in this case claims that decision to be such a former adjudication as to foreclose the issues raised in this record. The question urged upon our attention is as to the sufficiency of the notice of the local option election. The burden of showing the invalidity of the vote on the local option question—being a matter of defense—rests upon the defendant. The records of the county court relating to the adoption of the Local Option Law need not show proof that the notice was published; where they show that publication was ordered, the burden of showing a failure of such publication is then on the defend-

ant, the law presuming that the publication was made as ordered. [State v. Oliphant, 128 Mo. App. 252, 107 S. W. 32; State v. Bush, 136 Mo. App. 608, 118 S. W. 670; State v. Foreman, 121 Mo. App. 502, 97 S. W. 269.]

The State in this case introduced in evidence the records of the county court showing the presentation of a legal petition for a vote on the question of local option, the finding of the county court as to its sufficiency and the order that an election be held. The record as to giving notice is as follows: "Notice of said election to be printed in the Christian County Republican four consecutive weeks, and in the Billings Times two weeks." As we have stated, there being no evidence introduced either by the State or the defendant showing that any publication was made, the presumption of law is that the notice as required by the county court record was made in conformity to such order and published in the county in the Christian County Republican four consecutive weeks and that the last insertion therein was within ten days before the election, and also published in the Billings Times two weeks. So that the principal question presented for our consideration is whether the order as to notice was such a compliance with the statute as to make the election valid.

The statute regulating such elections provides: (R. S. 1899, sec. 3029,) : "Notice of such election shall be given by publication in some newspaper published in the county, and such notice shall be published in such newspaper for four consecutive weeks, and the last insertion shall be within ten days next before such election, . . ." It will be seen that the order of the county court requiring the notice to be published in the Christian County Republican was in precise compliance with the statute. But the above section continues in this language: ". . . and such other notice may be given as the county court or municipal body ordering such election may think proper, in order

to give general publicity to the election." It is over this latter clause that the contest is made in this case, it being claimed by appellant that the election was illegal because the county court ordered that the notice of the election should be given in the Billings Times only two weeks instead of four weeks.

In construing this section of the statutes, it has been held that if the notice of the election complies with the requirements of the section by being published in some newspaper in the county for four consecutive weeks, it will be sufficient though the body ordered the election failed to give other notice as "other notice is by the statute discretionary with the council; and this, too, even though an ordinance of the city may require a certain special proclamation of the mayor as notice of any municipal election." [State ex rel. v. Weeks, 38 Mo. App. 566.]

This section again came under consideration in the St. Louis Court of Appeals in a case involving the validity of the local option election in Lincoln county. In that case, it appeared that the Lincoln county court ordered that the notice be published as follows: "It it further ordered by the court that notice of said election be given by publication in the Troy Free Press, the Elsberry Democrat and the Silex Index, three weekly newspapers printed and published in Lincoln county, for four consecutive weeks, the last insertion to be within ten days next before the 28th day of October, 1905." It further appeared in said case that the notice thus ordered published was published according to order in the Troy Free Press and in the Silex Index the required four weeks; but as to the third paper—the Elsberry Democrat—it appeared that the publication was continued only three weeks and that its publication therein was suspended at the end of that time. In construing the latter clause of section 3029, hereinbefore set out, the court held that the notice of the election was insufficient and consequently that the election

held in pursuance of it was void; that the county court, having decided in their discretion that it was necessary to publish the notice in three papers for four consecutive weeks "to give general publicity to the election," strict compliance with the order was requisite; that the county court ordering the election being of the opinion that notice in all three papers for four consecutive weeks was necessary, notice in two of the papers for the required time and in the other for only three weeks was insufficient to attain the "general publicity" contemplated by the statute.  [State ex rel. v. Reid, 134 Mo. App. 582, 114 S. W. 1116.]

The section was also under consideration in a contest involving the validity of the local option election in the city of Warrensburg in Johnson county.  The city authorities in that case ordered the notice to be published in two newspapers, the Weekly Journal-Democrat and the Warrensburg Daily Star, no period of time being specified for the publication.  It appeared that the notice was published in the Warrensburg Daily Star for twenty-eight days, the required length of time, but that the publication in the Weekly Journal-Democrat was such that the last issue containing the publication was the day after the election, so that as to the last named paper the notice had not been published for four consecutive weeks before the election.  The respondents suggested that there was a compliance with the order on account of there being a difference in the wording of the orders of publication; that as to the Daily Star the order read, "for four *full* consecutive weeks," while that as to the Journal-Democrat was "for four consecutive weeks," omitting the word "full," and they claimed that a less time was meant for the Journal-Democrat than for the Daily Star.  The court held that the order as to both papers was identical; that if notice of a local option election, which need only be published in one paper, be published in more than one, it must be published in each for the full time,

and that the vote on the Local Option Law, not having been held pursuant to statutory notice, was void. [State ex rel. v. Johnson County Court, 122 S. W. 316.] Attention in this connection is called to the facts on which the Warrensburg case was decided. The order calling the local option election recited that the notice was to be given in *both* the Daily Star and the Journal-Democrat for four consecutive weeks. In this respect, the case of State ex rel. v. Reid, *supra,* is precisely the same. The election was expressly held invalid because the discretion of the county court had been exercised by deciding that public interest required that the notice should be given in both papers for four weeks. After they had made the order, their discretion had become mandatory and the election was held invalid by reason of the failure to comply with the record order.

The case that we now have under consideration is to be distinguished in its facts from both of said cases in that the *order* in the present case required publication in one paper for four weeks and in the other paper for two weeks, and that the publication was in fact made in strict conformity to the order of the county court. In the Warrensburg case, the court declared that while it is only necessary that the notice be published in one paper, yet if published in more than one, it must be published in each for the full length of time. It will be seen that this declaration of law, while applicable to the state of facts then before that court, is a more general statement of the law than the facts required, and as to such additional statement, it is *obiter dictum.* The proposition so stated is supported by the cases which we have examined in this opinion and they are all cases in which the notice of the election failed to conform to the order of the county court; and we are of the opinion, as applied to the facts of those cases, that it is good law, but not so when applied to the facts of the present case.

We decline to follow the line of interpretation of the statute under consideration as asked by the appellant in this case. The language of the statute is couched in words which have a plain, ordinary and natural meaning. The Legislature undoubtedly said what it meant and meant what it said; and when it authorized the county courts to exercise their discretion as to the length of time the additional notice should be published, the Legislature did not require that the additional notice should be published in the same way or for the same length of time as required by the mandatory part of the section. And if the county court had seen fit to have required the *additional* notice to be given by posting bills on schoolhouses, or sending circular letters through the mail, or by proclamation by outcry on crossroads, and the notice had been given according to the order, it would have been within the meaning of the statute. The language of the statute is neither doubtful nor ambiguous. There is nothing within the spirit of the statute that is not within its letter, and hence there is no room for judicial construction. We find, therefore, that the order directing how the notice of the local option election should be published was in strict compliance with the statute, and that the notice having been published in conformity to the order of the county court, the local option election was valid.

II. The appellant complains of the instructions given for the State of which the following is one:

"4. Gentlemen of the jury, although a prescription signed by the physician who sells liquor is a complete defense if such person was a regular practicing physician, yet in order to be available as such defense, it must be issued before the sale of the liquor, and that if the prescription introduced in evidence was signed without the knowledge of Ernest Wood and without any request therefor, then it was no defense to the charge."

The defendant requested the following instruction which the court refused to give:

"A. The court instructs the jury that a regularly licensed and practicing physician may prescribe intoxicating liquor for a third person not being present and upon the application of a second party applying for such intoxicating liquor for such third party, and such prescription, if first obtained, dated, and containing the words, a necessary remedy, and signed by such practicing physician, such prescription is an absolute defense to the illegal sale of intoxicating liquors by the defendant, and if you find from the evidence that the defendant, J. A. Robertson, had such a prescription as above defined, you will find him not guilty."

It is contended that the giving of instruction numbered four and the refusal to give instruction marked "A" constitutes reversible error.

The defendant testified that he was the owner of a half interest in the drugstore, that he was a registered pharmacist and a surgeon and physician. Following his signature on the prescription offered in evidence appear the letters "M. D." No effort was made on the part of the defendant to show that he was a regularly registered and practicing physician otherwise than by his statement as shown above. No objection was made by the State to this statement or to the introduction of the prescription, nor was there any allusion in the brief filed by the prosecuting attorney in this case as to the insufficiency of this proof. In justice to the defendant, after the matter has been apparently waived by the State and the case tried upon the theory that he was a regularly registered and practicing physician, we do not deem it just at this late date to resurrect this issue as of our own motion.

The evidence in the case was conflicting, and for our consideration of this appeal, we are only required to examine the evidence of the defendant himself. He admitted the sale of the whisky to Ernest Woods, and

justified by offering the following prescription for the whisky issued:

"ROBERTSON DRUG CO.,
"*J. J. Williams, Manager.*
"Bank Building                    Southwest Cor. Square
"Ozark, Mo.

"For Mrs. Sigil Woods, by boy. Elex Lactopepsin, 2 ounces. Sp. Fermenti, 14 ounces. M. S. Y. As directed. A necessary remedy, J. A. Robertson, M. D. No. 4048. Date 6—8—1907."

The defendant further testified that there was nothing said between himself and the boy, Ernest Woods, in regard to the prescription when the whisky was furnished. His evidence was substantially as follows: "He told me he wanted whisky for his mother and I wrote his mother's name in the prescription. I asked him how much whisky he wanted and who for, and he said his mother. I asked him what was the trouble with his mother and he said stomach trouble. He said nothing about a prescription, but I understood that he wanted it legal. I went around behind the counter and wrote the prescription and filled it. I did not show the prescription to the boy, and so far as I know he knew nothing about the prescription. I prescribed this whisky—a pint of whisky. I know his mother, but was not treating her at the time. The whisky was for stomach trouble. It is used in stomach trouble for weakness. The prescription was not a large amount for a person with that trouble. It is a proper remedy where the stomach is run down and has gastrics. There was some pepsin put in the prescription as a remedy for indigestion."

A physician who is also a pharmacist and the owner of a drugstore may sell intoxicating liquor on a prescription written by himself, and if it complies in form with section 3047 of the Revised Statutes of 1899, it

justifies the sale of intoxicating liquor by such physician as a pharmacist. [State v. Manning, 107 Mo. App. 51, 81 S. W. 223; State v. Willis, 128 Mo. App. 214, 106 S. W. 584.]

Where a physician issues a prescription in regular form, it is authority for the druggist to sell the liquor therein prescribed, and such druggist has a right to presume that such prescription was issued in good faith. It has also been held that where a physician who is also a registered pharmacist operating a drugstore is indicted for selling liquor, his own prescription, prepared as required by law, and produced in evidence, is a complete bar although the evidence shows that the liquor prescribed was not a necessary remedy and the prescription itself was a false pretense, and in such case the defendant must be prosecuted as a physician for illegally writing and signing the prescription or selling it under sections 3049 and 3050, Revised Statutes of 1899. [State v. Pollard, 72 Mo. App. 230.]

In the case of State v. Hensley, 94 Mo. App. 151, 67 S. W. 964, the same question was under consideration. The defense was that Hensley wrote the prescription as a physician and filled it as a druggist and pharmacist and that the prescription thus made out by him constituted a complete defense to the prosecution. The court very pertinently remarked: "It looks very much to us like a man who issues a bogus prescription for whisky as a physician and then fills it as a pharmacist, is guilty of two crimes instead of one and ought to be amenable for both of them." This statement meets with our entire concurrence.

We cannot declare as the law of this case that where a defendant, acting in the triple capacity of physician, owner of a drugstore and pharmacist, is charged by the State with an illegal sale of whisky, he should be allowed to shield himself behind a sham prescription which he has fraudulently and criminally fabricated for

142 App—4

the very purpose of covering up his crime. The instruction requested by the defendant was properly refused. The trial court, however, in its instruction numbered four, required that the prescription in order to constitute a defense must have been issued at the request of the party who obtained the liquor. Section 3047 makes no such requirement when the pharmacist makes the sale on a prescription, but only requires that such prescription shall be "first had and obtained from some regularly registered and practicing physician." When a defendant is charged—as in this case—with illegally selling intoxicating liquors and justifies the sale under a prescription, the good faith of such sale should be submitted to the jury by proper instructions. The judgment is accordingly reversed and the cause remanded. All concur.