STATE OF MISSOURI, Respondent, v. J. E. KIMMEL, Appellant.

Springfield Court of Appeals, May 8, 1911.

1. CRIMINAL LAW: Local Option Law Violation: Adoption of Local Option Law: Record of County Court. In a prosecution for violating the Local Option Law the state makes a prima facie case, showing that the law had been adopted by offering in evidence the records of the county court giving the result of the local option election and ordering the publication of the result of such election.

2. ——: ——: ——: ——: Burden on Defendant. In a prosecution for violating the Local Option Law, in making its prima facie showing that the law had been adopted, the

state offered in evidence a certain page of the county court records, upon which appeared an order by the court for a special election, which order was incomplete, both as to the purpose of the election and the day upon which it was to be held. But there was nothing to show that this was the only order made relating to the .calling of the local option election. *Held,* that the burden was upon the defendant to show that the record offered in evidence was, as a matter of fact, the only record made by the county court relating to that matter.

3. ———: ———: ———: **Prima Facie Case.** Where the state makes a prima facie case of the adoption of the Local Option Law, such case must stand until evidence is offered to overthrow it, and if the evidence offered does overthrow it, it is immaterial whether such evidence is introduced by the state or the defendant.

4. **EVIDENCE: Witnesses: Detectives: Criminal Law: Instruction.** An instruction asked in a criminal case, which tells the jury that they should not convict on the uncorroborated testimony of two witnesses who had been employed as detectives in the case, was *held* erroneous and properly refused.

5. ———: ———: **Defendant: Criminal. Law Instructions.** An instruction asked in a criminal case which tells the jury that they must not reject the testimony of defendant, but must weigh it by the same rules as to the testimony of other witnesses, was *held* erroneous and properly refused.

6. **CRIMINAL LAW: Local Option Law Violations: Prescriptions: Evidence.** Defendant was prosecuted for violating the Local Option Law on account of alleged sales to both A and B. At the close of the testimony the state elected to stand upon the sale to B. During the trial defendant had offered to introduce a prescription which he contended authorized a sale to A and after the state elected to stand on the sale to B, the court sustained the objection to the introduction of the prescription. *Held,* that the ruling of the trial court was proper for the prescription would have no tendency to rebut or justify a sale to B.

7. ———: ———: ———: ———. In a prosecution for violating the Local Option Law, where defendant justifies the sale under a prescription, it is necessary for him to show that the doctor who issued the prescription was a regularly, registered and practicing physician.

8. ———: ———: **Prior Conviction: Evidence.** In a prosecution for violating the Local Option Law after defendant had testified as a witness, it was developed on cross-examination that on a former occasion he had pleaded guilty to a violation of law by an illegal sale of liquor. Defendant then sought to

explain the facts connected with that sale, which testimony the court excluded. *Held*, that the action of the trial court in excluding such testimony was proper, for the reason that defendant's prior conviction was the only fact admissible, and a judgment of a court of record cannot be contradicted by oral testimony.

9. EVIDENCE: Witnesses: Reputation of Defendant: Criminal Law: Cross-Examination. In a criminal case where witnesses for the state in rebuttal, had testified that the general reputation of defendant for morality was bad in the community, it was proper on cross-examination, to bring out all they had heard the people say.

10. ———: ———: ———: ———: Instructions: Reputation of Defendant: Criminal Law: Evidence: Misdemeanor. Where the reputation of defendant in a criminal case was put in issue, only as affecting his credibility as a witness, the statute regarding the instruction to be given on the question of good character, does not apply. That section applies only in case defendant offers proof that his general reputation is good as a part of the defense, and in a misdemeanor the court is not required to give such an instruction, unless requested by the defendant.

Appeal from Dade Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Holland & Delaney* for appellant.

(1) A general reputation cannot be shown by the character of business engaged in or by reputation attaching generally to the business. State v. Duffy, 124 Mo. 1; State v. King, 78 Mo. 555. (2) Evidence assailing the character of a witness must be on lines of general reputation. State v. Grant, 79 Mo. 113; State v. Bradford, 79 Mo. App. 346. (3) The evidence fails to show the adoption of the so-called Local Option Law. Each provision of the law is jurisdictional. The law is not in force unless it affirmatively appear that each and all provisions have been complied with. R. S. 1909, secs. 7238, 7243. (4) The witnesses upon whose testimony the state relies for a conviction are no better than ac-

complices and the cautionary instruction asked by defendant should have been given. Their employment was not to gather evidence of a crime already committed. Their testimony was not to facts tending to establish guilt of a crime already committed. But they were employed to induce one by false representations to commit a crime or at least to aid one to commit a crime and trap him therein. Commonwealth v. Downing, 4 Gray, 29; Preuit v. People, 5 Neb. 377; Heldt v. State, 20 Neb. 492; Wharton on Criminal Evidence, sec. 440.

*Edwin Frieze*, Prosecuting Attorney, *William B. Skinner*, of counsel, for respondent.

(1) The record of the county court of Dade county, Missouri, in respect to the adoption of the Local Option Law, read in evidence, was sufficient proof in law, and warranted the trial court in declaring that such Local Option Law was in force in Dade county, Missouri, in the month of October, 1909. State v. Oliphant, 128 Mo. App. 252; State v. Kennett, 132 S. W. 286; State v. Robertson, 142 Mo. App. 38. (2) The defendant having appeared as a witness in his own behalf, it was competent for the state to impeach him as such, by showing his general reputation for morality to be bad, and this is true even though such bad reputation arise from violations of the law in respect to the sale of liquor. State v. Christopher, 134 Mo. App. 6; State v. Oliphant, 128 Mo. App. 252.

COX, J.—Defendant was convicted for a violation of the Local Option Law and has appealed. The errors assigned relate to the admission and rejection of testimony, and the giving and refusing of instructions. The court instructed the jury that under the evidence the Local Option Law had been adopted in Dade county. This is assigned as error. The state offered in evidence the record of the county court, showing the result of the local option election, and the order of the court for

the publication of the notice of the result of such elec
tion. Under the repeated holdings in this state this
made a prima facie showing that the law had been
adopted. [State v. Searcy, 39 Mo. App. 393; State v.
Foreman, 121 Mo. App. 502, 97 S. W. 269; State v. Oli-
phant, 128 Mo. App. 252, 107 S. W. 32; State v. Robert-
son, 142 Mo. App. 38, 125 S. W. 215; State v. Kennett,
132 S. W. 286.] In this case the state offered the record
of the county court found in book 17, page 59, and upon
that page we find the record showing the presentation
of the petition finding that it was signed by one-tenth of
the qualified voters of the county who were qualified
to vote for members of the Legislature. Then follows
this provision. "It is, therefore, ordered by the court
that a special election be held in said county at the
usual voting precincts therein at which general elections
are held." It will be noticed that this record does not
state the purpose for which the election is to be held;
nor does it state the day upon which the election is to
be held, and appellant contends that this order is wholly
insufficient to warrant the holding of an election under
it. If it were shown that this was all the record made by
the county court in relation to that matter we should
agree with defendant's contention that it is insufficient,
but this showing was not made. The offer of the state
is the record upon page 59 of book 17. They did not offer
the order of the court. There is nothing in the offer of
the state, nor in the extract from the record printed in
the abstract to show that what is here stated in relation
to the holding of the election is the entire order made by
the court; nor is there anything to indicate that no other
order was made.

When the state offered testimony showing the result
of the election and the order of the court for the publica-
tion of the notice of the result of the election it had made
a prima facie case, showing the adoption of the Local
Option Law. This prima facie case must stand until

evidence is offered to overthrow it.  If the evidence offered does overthrow it then we think it immaterial as to who offers it, whether the state or the defendant. The evidence which it may be contended overthrows the prima facie case made by the state can be given no greater force because offered by the state than could be given it had it been offered by the defendant.  If the defendant had sought to show that the proper steps had not been taken in the calling of the election he would not only have been required to show the order of the court but unless that order showed upon its face that it was complete within itself, and was the only order made in relation to the matter therein stated, it would have been the duty of the defendant to have gone further and shown that the record offered was, as a matter of fact, the only record made by the court relating to that matter.

In our view, the record offered does not show that the court did not, by order of record, designate the purpose for which the election was to be held, and name the day on which it was to be held.  The record, as read, shows upon its face that it is incomplete.  The court might very properly have taken up a consideration of the sufficiency of the petition and determined that question and decided that it would order an election upon that petition and made the order as they did make it upon one day, and have left the question as to when the election should be held to be determined upon another day, and they might very properly have determined that question at another time and made another order of record, stating the purpose of the election and the day on which it was to be held.  If they did not do this it would have been an easy matter when the county clerk, who is the custodian of the record, was upon the stand to have asked him the question whether the record found on page 59 of book 17 was the only record made in relation to the calling of the election, and if it were the only record, he could have readily said so and that

would have settled the question; but as no evidence of this kind was offered and the record of the court found on the page offered by the state does not show that it is the only record made in relation to that question, our conclusion is that the prima facie case made by the state as to the adoption of the law was not overthrown by the record found upon the page offered by the state. In this we are supported in principle by State v. Foreman, 121 Mo. App. 502, l. c. 508, 97 S. W. 269. In that case it was contended by the appellant that the record of the county court should show that the court found the petition to have been signed by the requisite number of qualified voters who were qualified to vote for members of the Legislature. The record only showed that the petition was signed by the requisite number of qualified voters, and said nothing as to their being qualified to vote for members of the Legislature. In discussing that question the court used this language: "We do not regard that it was necessary for the record of the county court to show how it ascertained the qualifications of the voters so long as it does not show they pursued an illegal method." So, in this case, after the state had made a prima facie showing that the Local Option Law had been adopted, the effect of that prima facie showing could not be overcome until it was shown that as a matter of fact some essential step had not been taken.

The testimony of the sale of liquor was by two witnesses who had been employed as detectives for the purpose of ascertaining whether or not this defendant and others had violated the Local Option Law. Defendant asked, and the court refused, the following instruction:

"The court instructs the jury that upon their own testimony, the witnesses, Rudie and Wein, occupy no better position than that of an accomplice to an alleged crime and for such reason and on such account you are instructed to receive their testimony with great caution,

and you should not convict on their uncorroborated testimony."

The defendant now insists that the refusal of this instruction was error. This instruction was properly refused for two reasons. One is that it tells the jury that they should not convict on the uncorroborated testimony of these witnesses. That is not the law in this state even if we were to regard them as accomplices. It was also properly refused for the reason that it was a comment upon the testimony. [State v. Oliphant, 128 Mo. App. 252, 107 S. W. 32; State v. Kennett, 132 S. W. 286.]

Defendant also asked, and the court refused, the following instruction:

"While in considering the testimony of the defendant you should consider that he is the defendant testifying in his own behalf, but you must not reject his testimony because he is the defendant, but you must weigh his evidence by the same rules as you weigh the testimony of every other witness."

This instruction was erroneous because it told the jury that they could not reject defendant's testimony because he was the defendant. The jury were properly instructed, in an instruction given by the court, that the defendant was a competent witness in his own behalf, and that it was the duty of the jury to consider his testimony, together with all the other evidence, but in determining what weight the jury should give to his testimony, they might take into consideration the fact that he was the person on trial and interested in the result of the verdict. This instruction was all that defendant was entitled to upon that question. The attention of the jury was called to the fact that he was a competent witness and that it was their duty to consider his testimony, but it also very properly told them that the weight to be given to his testimony was a question for their consideration alone, and in determining that weight they might consider the fact that he was the de-

fendant and his interest in the result of the trial. If the jury thought that his evidence was unworthy of belief because of his interest, we know of no rule by which the court could force them to any other conclusion. It was for the jury to weigh his testimony as it was for them to weigh the testimony of other witnesses, and the court had no right to tell the jury they could not reject it. They could reject it if they saw fit to do so, and could do it for the reason alone that he was the defendant. What effect the fact that he was the defendant and interested in the result would have upon the truth or falsity of his testimony was a question for the jury to determine alone, and the court could not determine that for them.

The evidence tended to show that on the day the sale of liquor was claimed to have been made the two witnesses for the state, Wein and Reudi, were in defendant's drug store and tried to buy liquor, but were refused because they had no prescription. The evidence upon the part of the state then further showed that Wein afterward procured a prescription and purchased one-half pint of liquor under it in the forenoon, and that later in the day these two witnesses were back in the drug store and each bought a half pint of whisky without having a prescription. At the close of the state's testimony, counsel for defendant asked that the state be required to elect upon which sale it would stand. The state did elect to stand upon the sale to the witness Reudi. During the introduction of the state's testimony the defendant produced to the witness Wein a prescription so as to have it identified as the prescription upon which he had purchased liquor. When the state elected, at the close of its testimony, to seek a conviction upon the sale to Reudi, the court then stated that he would sustain the objection to the introduction of the prescription. On the part of the defense the defendant testified that the sale was made under the prescription; that the prescription called for three half pints; that he delivered one half

pint to Wein in the morning when the prescription was presented, and at Wein's request, he had set aside the other two half pints, and that when Wein returned in the evening of the day he delivered to him the other two half pints. Defendant denied the sale to Reudi; denied delivering any whisky to Reudi. The defendant now contends that the court erred in excluding the prescription. While conceding that it would not protect a sale to Reudi, it is contended that it was admissible as a part of the *res gestae,* and in corroboration of defendant's testimony as to how the liquor was disposed of. With this contention we do not agree. Defendant did not contend that he sold to Reudi under a prescription, but denied any sale to him at all. Hence, the introduction of the prescription could in no way have corroborated his testimony if he did not deliver any liquor to Reudi. If defendant admitted that he delivered one-half pint of liquor to Reudi and had contended that he did so at Wein's request, then the prescription might have been admissible as tending to show that the sale was made under it. But the prescription would have no tendency to rebut a sale to Reudi when it was contended that if made at all it was made without any prescription.

Further, if defendant wished to make the prescription competent it was necessary for him to have shown, or offered to have shown, that the doctor who issued it was a regular registered and practicing physician. No such proof was offered and the court's action in rejecting the prescription would have been justified for that reason alone if it had been otherwise competent. [State v. Milliken, 24 Mo. App. 462; State v. Kennett, 132 S. W. 286.]

After defendant had testified as a witness, it was developed upon cross-examination that he had, on a former occasion, pleaded guilty to a violation of law by an illegal sale of liquor. Defendant's counsel then sought to have defendant explain what the facts were connected with that sale and offered to show that the sale was made

to a man who was not a drinking man; that it was for ten cents' worth of whiskey and some strychnine, which the purchaser stated was to be used to kill rats. The court excluded this testimony, and defendant assigns this as error. We think the testimony was properly excluded. The fact that defendant had been convicted was the only fact that was admissible on that question. To permit the defendant to explain the circumstances of the conviction for the purpose of destroying or weakening the effect of the conviction would have been to open up a reinvestigation of the former case; for if the defendant were permitted to explain, the state should also be permitted to rebut that explanation, and if this course were adopted it would result in a retrial of the former case, and the effect of the record of the result of that trial would be disputed by the oral testimony of witnesses, and thus a judgment of a court of record would be contradicted by oral testimony, and this cannot be done. [State v. Meyers, 99 Mo. 107, l. c. 119, 120, 12 S. W, 516; Strobel v. Clark, 128 Mo. App. 48, 106 S. W. 585; Holden v. R. R. Co., 135 S. W. 507; State v. Martin (So. Dak.), 122 N. W. 647; Commonwealth v. Galligan, (Mass.), 268 N. E. 1129; Gallagher v. People (Ill.), 71 N. E. 842.]

Witnesses were also put upon the stand by the state in rebuttal, and testified that the general reputation of defendant for morality was bad in the community in which he lived. On cross-examination some of these witnesses stated that what they heard in relation to the defendant's reputation was in relation to the illegal sale of intoxicating liquors. These witnesses were permitted, on cross-examination, to testify that they had heard that defendant had been convicted in a former case, and also heard it was for a sale of liquor to be mixed with strychnine. This was proper because in that examination the question at issue was what the people had said about the defendant, and it was competent to bring out all they had said.

Defendant also contends that the court erred in not instructing the jury on the question of defendant's reputation, contending that as his reputation was put in issue it was the duty of the court to instruct upon that question. The defendant's reputation was only put in issue as affecting his credibility as a witness, and where this is true the statute requiring the instruction to be given on the question of good character does not apply. That section only applies in case the defendant offers proof that his general reputation is good as a part of the defense, and does not apply where his reputation for truth and veracity, or general morality, is put in issue merely for the purpose of affecting his credibilty as a witness. Defendant did not ask the court to instruct the jury in relation to this question, and unless asked, the court was not required to give such an instruction in a trial for a misdemeanor. [State v. Poundstone, 140 Mo. App. 399, 124 S. W. 79; Statutes 1909, sec. 5231.]

The judgment will be affirmed. All concur.