SAMUEL BALEN, Appellee, v. COLFAX CONSOLIDATED COAL COMPANY, Appellant.

MASTER AND SERVANT: Rejecting Master and Non-Rejecting
1  Servant—Procedure. A servant who has, expressly or by statutory presumption, *accepted* the provisions of the Workmen's Compensation Act, and suffered injuries arising out of and in the course of the employment, must proceed against his employer, who has *rejected* the act, by and through a modified common-law action modified by depriving the employer of specified common-law defenses, and by creating, against the employer, specified presumptions relative to negligence and proximate cause. (Secs. 2477-m, 2477-m2, Code Supp., 1913.)

**MASTER AND SERVANT:** Pleading.   A servant who proceeds at common law against a master, makes a prima-facie case by alleging: (a) that the relation of master and servant existed; (b) that the injury arose out of and in the course of the employment; (c) that the master had, and that the servant had not, rejected the Workmen's Compensation Act; and (d) that the servant had suffered damages by reason of said injury. (Sec. 2477-m, Code Supp., 1913.)

**TRIAL:** Instructions—Failure to Except.   Failure to except to instructions prior to the reading to the jury precludes subsequent complaint that the instructions authorized an allowance of interest on an unliquidated claim.   (Sec. 3705-a, Code Supp., 1913.)

*Appeal from Jasper District Court.*—HENRY SILWOLD, Judge.

JUNE 27, 1918.

ACTION to recover damages consequent on personal injury in defendant's mine, resulted in judgment as prayed. The defendant appeals.—*Affirmed.*

*R.* and *F. G. Ryan* and *J. E. Cross,* for appellant.

*John T. Clarkson,* for appellee.

LADD, J.—The defendant operates a coal mine, in which plaintiff was employed as a coal digger. The shaft extended down about 180 feet, and in it were two cages, operated by machinery, one ascending as the other descended. From the shaft, entries had been driven, and rooms turned off of these. Empty cars were taken from the cages on the north side, and loaded cars run on at the south side of the shaft. An entry extended 20 or 25 feet south of the shaft, and thence entries had been driven eastward and westward, and these were made use of as motor haulage ways,—that is, through these, cars were hauled by electric motors. From the south en-

1. MASTER AND SERVANT: rejecting master an l non-rejecting servant: procedure.

try, there was a slight ascent to the westward, for a distance of about 50 feet; and beyond, the grade was descending. At the highest point, or apex, was what was denominated a "motor hole." As the motor reached this point, it was detached and run in this "motor hole," and the trip of loaded cars allowed to move on by their own momentum, until an employe, located a little farther on, stopped the cars, by putting sprags into the wheels. When the cager required them to run in the cage, they were permitted to move on around the corner to the shaft. Ordinarily, the hoisting of coal ceased at 4:15 o'clock in the afternoon, and the miners were then raised to the surface by the cages, about ten at a time. Shortly before this, the miners and their helpers collected in a sort of waiting room, a short stub entry, south of the shaft, and near where the entry turned westward, and there waited until the whistle blew, signaling that hoisting coal had ceased. In the afternoon of August 17, 1914, plaintiff arrived at the waiting room at about 4:10 o'clock, and remained there until the whistle blew. According to custom, the miners were assigned numbers as they arrived, and the cager called and loaded ten at a time, in the order of such numbers, thus: from one to ten, inclusive, in the first load; the next ten in the second load; and so on. When the whistle blew, plaintiff, with others, left the waiting room and went over nearer the shaft, as the evidence tended to show was customary; and, when 12 or 14 feet therefrom, waiting for his number, 18, to be called, a trip of cars coming from the west entry and on north ran against him and forced him into the "sump," where the cage coming down rested on him, causing the injuries complained of. It appears that a trip of cars was hauled from the west, and did not have enough momentum to carry it over the point, or apex, when the motorman detached the motor and ran it in the motor hole. A second trip coming up, the motorman was unable to move his

cars forward far enough to allow some mules worked in the mine to pass, in going to the barn; and, to afford a passageway for the mules, the second motorman attached his motor to the trip of cars ahead, pushing it over the apex and hauling those behind. As the first trip went over, four or five of the front cars became uncoupled; and, as no one was there to sprag the wheels, these moved east and north toward the shaft where the collision occurred, as stated. Plaintiff did not observe the approach of the cars until someone shouted, "The trip is loose," when he stepped to the side of the track, but, finding the space too narrow, attempted to cross to the other side, and in so doing was struck by the front car and thrown into the "sump." Recovery was sought for damages in loss of wages, expenses for medical services, and for mental and physical pain suffered and which will be suffered in the future, it being alleged that the injuries occurred "while plaintiff was an employe of defendant, engaged in the work of mining coal * * .* engaged in the performance of his work in the pit sump at the bottom of the shaft * * * by reason of a loaded trip breaking and running into said sump where plaintiff was located." The petition also alleged that defendant had rejected the "compensation law" in the manner required by the statute and by amendment thereto; alleged that plaintiff was injured while waiting for his turn to be hoisted to the surface, and that he "had not given any notice as required or contemplated by the statutes with reference to the rejection of what is known as the Compensation Law, enacted by the thirty-fifth general assembly; that is to say, the plaintiff alleges that he had not given a written notice rejecting the law."

The defendant demurred, on the grounds: (1) That the court was without jurisdiction; (2) that, as plaintiff had not rejected the compensation law, he may not recover under its provisions; and (3) that the petition neither alleged

negligence on the part of defendant nor that plaintiff was without fault. The demurrer was overruled, and defendant pleaded the first two grounds of demurrer in his answer, and also alleged its freedom from negligence, and that plaintiff, by want of care on his part, contributed to his injury. The evidence tended to establish the facts as alleged, and the court submitted the cause to the jury on the theory that, although plaintiff, by not rejecting, is deemed to have accepted the Employers' Compensation Act, he might recover under the common law, as modified by Section 2477-m of the Code Supplement, 1913; and verdict was returned and judgment was entered for plaintiff.

I.   Appellant contends that Chapter 8 of Title XII of Code Supplement, 1913, as amended by Chapter 270 of the Acts of the Thirty-seventh General Assembly, provides a special and exclusive remedy in cases like this, and that none other may be resorted to. This is true where neither employer nor employe rejects the terms, conditions, and provisions of the act, in the manner prescribed. But other situations arise and are provided for, (1) where the employer only rejects, (2) where the employe alone rejects, and (3) where both reject. Section 2477-m of the Code Supplement, 1913, deals with the first of these,—that is where the employer rejects and the employe accepts,—and declares that, though the employer rejects the terms, conditions, and provisions of the act, he "shall not escape liability for personal injury sustained by an employe of such employer when the injury sustained arises out of and in the usual course of the employment because: (1) The employe assumed the risks inherent in or incidental to or arising out of his or her employment, or the risks arising from the failure of the employer to provide and maintain a reasonably safe place to work, or the risks arising from the failure of the employer to furnish reasonably safe tools or appliances, or because the employer exercised reasonable care

in selecting reasonably competent employes in the business; (2) that the injury was caused by the negligence of the co-employe; (3) that the employe was negligent unless and except it shall appear that such negligence was wilful and with intent to cause the injury; or the result of intoxication on the part of the injured party.   (4) In actions by an employe against an employer for personal injury sustained arising out of and in the course of the employment where the employer has elected to reject the provisions of this act, it shall be presumed that the injury to the employe was the direct result and growing out of the negligence of the employer; and that such negligence was the proximate cause of the injury; and in such cases the burden of proof shall rest upon the employer to rebut the presumption of negligence."

Section 2477-m2 relates to the second situation, where the employe alone rejects.   In the first paragraph, it declares the general rule where neither employer nor employe rejects the terms, conditions, and provisions of the act, precisely as does the first paragraph of Section 2477-m:

"The rights and remedies provided in this act for an employe on account of injury shall be exclusive of all other rights and remedies of such employe, his personal or legal representatives, dependents or next of kin, at common law or otherwise, on account of such injury; and all employes affected by this act shall be conclusively presumed to have elected to take compensation in accordance with the terms, conditions and provisions of this act until notice in writing shall have been served upon his employer, and also on the Iowa Industrial Commissioner, with return thereon by affidavit showing the date upon which notice was served upon the employer."

Following this, the alternative, in event of rejection by the employe of the terms, conditions, and provisions of the act, is stated:

"In the event such employe elects to reject the terms, conditions and provisions of this act, the rights and remedies thereof shall not apply where an employe brings an action or takes proceedings to recover damages or compensation for injuries received growing out of and in the course of his employment, except as otherwise provided by this act; and in such actions where the employe has rejected the terms of this act the employer shall have the right to plead and rely upon any and all defenses, including those at common law, and the rules and defenses of contributory negligence, assumption of risk and fellow servant shall apply and be available to the employer as by statute authorized unless otherwise provided in this act. Provided, however, that if an employe sustains an injury as the result of the employer's failure to furnish or failure to exercise reasonable care to keep or maintain any safety device required by statute or rule, or violation of any of the statutory provisions or rules and regulations now or hereafter in force relating to safety of employes, the doctrine of assumed risk in such case growing out of the negligence of the employer shall not apply or be available as defensive matter to such offending party."

In short, the prosecution of the claim by an employe who has rejected the act, for personal injury arising out of and in the course of his employment, against his employer, will be subject to precisely the same defenses as prior to the enactment of the Compensation Act; for the exception at the end of the paragraph last quoted merely expresses the law as previously interpreted by this court. *Verlin v. United States Gypsum Co.*, 154 Iowa 723; *McCarney v. Bettendorf Axle Co.*, 156 Iowa 418.

The theory of the defendant is that Section 2477-m2 provides an exclusive remedy for the employe, in event he does not reject the terms, conditions, and provisions of the act: that is, by filing his claim with and obtaining compen-

sation for his injuries through the industrial commissioner; or at least that recovery would be measured by what that officer would be required to allow, under the law. If such were the intention of the legislature, what purpose was had in the enactment of Section 2477-m, especially that portion of it relating to procedure in a situation where the employer had, and the employe had not, rejected the terms, conditions, and provisions of the act?

In that section, the remedy provided is made exclusive as to the employer, where neither rejects the terms, conditions, and provisions of the act; and following this, an alternative is provided, where the employer alone rejects these. The facts of the case at bar, where defendant only rejected the act, bring it squarely within the procedure prescribed in this alternative; and, if defendant's theory were correct, all that portion of Section 2477-m would be nugatory, and necessarily could not be given effect. But statutes *in pari materia* must be construed together, and so construed, if possible, as to give effect to all, and avoid rejecting any as meaningless. In Section 2477-m2, the exclusive character of the remedy, where neither rejects, is again recognized, and made applicable to the employe, and an alternative is provided where he alone rejects. It does not purport to deal with a situation where the employer rejects and the employe accepts; for that situation has been covered by the preceding section. The latter section does not purport to impinge on the one preceding; and, by construing the first paragraph in each to relate to a situation where both are presumed to accept the terms, conditions, and provisions of the act, all confusion in so construing the several sections as to give effect to each disappears. The entire act proceeds on the theory that, in event either party reject its terms, conditions, and provisions, the rights and remedies provided for therein are not available; and that such rights and remedies are exclusive only when, by

not rejecting, both employe and employer have accepted the terms, conditions, and provisions of the act.

It is argued that, in order to maintain an action in court under Section 2477-m, the employe must reject the terms, conditions, and provisions of the act, so as to come within the terms of Section 2477-m4 of the Code Supplement, 1913:

"Where the employer and employe elect to. reject the terms, conditions and provisions of this act, the liability of the employer shall be the same as though the employe had not rejected the terms, conditions and provisions thereof."

In other words, the employe must, in order to maintain an action in court, reject statutes enacted for his benefit and with the design of promptly recompensing him for injuries suffered in the course of his employment. No purpose would be served by so doing, and to thus force the rejection of the provisions of the act by the employe, as a condition precedent to the maintenance of suit in court, would be contrary to its spirit, manifested in provisions carefully guarding the free exercise by the employe of the right of rejecting, found in Section 2477-m2. The construction adopted harmonizes the several sections, applies the doctrine running through the act that the rights and remedies provided therein are exclusive only when both employe and employer, by not rejecting, accept the terms, conditions, and provisions of the act, and clarifies the manifest intention of the legislature that the first paragraph of Section 2477-m relates to the exclusive character of the rights and remedies provided as affecting the employer, and that the first paragraph of Section 2477-m2 relates to the exclusive character of the rights and remedies therein provided as affecting the employe. Both assume the only situation in which said rights and remedies are available: i. e., where both, by not rejecting the terms, conditions, and provisions

of the act, are conclusively presumed to have accepted them. We are of opinion that there was no error in trying the cause in accordance with the procedure prescribed by Section 2477-m, and that no other was available to the plaintiff, as employe. The claim must necessarily have been asserted in court, and tried according to the procedure prescribed by Section 2477-m, quoted. This was done, and there was no error in holding that the practice and compensation prescribed for situations where both employer and employe have accepted the terms, conditions, and provisions of the act, did not obtain.

II.   Exception is taken to the pleadings for that the petition did not allege plaintiff's freedom from negligence, nor that the injuries suffered were the proximate result of negligence on the part of defendant. There was alleged, however, (1) the relation of employer and employe; (2) that the injury arose out of and in the course of such employment; (3) that the employer had rejected the Employers' Compensation Act; and (4) damages in consequence of said injury; and no more than these were necessary to be proven, in order to make out a prima-facie case for recovery. Section 2477-m, Code Supplement, 1913. It is a general principle of pleading that no more need be alleged than is essential to prove in making out a case.

2. MASTER AND
   SERVANT:
   pleading.

Though pleading specific acts or facts constituting the alleged negligence is not essential to the statement of a cause of action (*Gordon v. Chicago, R. I. & P. R. Co.*, 129 Iowa 747, 752), yet, if the petition contains allegations which, if true, constitute negligence, there is no occasion for clinching these by assertion that they do constitute negligence. The petition was sufficient. *Mitchell v. Swanwood Coal Co.*, 182 Iowa 1001; *Mitchell v. Phillips Mining Co.*, 181 Iowa 600.

III.   A verdict for $250.16 was returned. On motion

for new trial because of the excessiveness of this, the court reduced the amount to $200.16, which included all damages proven, together with interest thereon at the rate of 6% per annum from the time of the injury. Complaint is made about the allowance of interest. The claim was for unliquidated damages accruing largely after the collision. Had the damages been complete at the time stated, the rule would have been as stated. *Jacobson v. United States Gypsum Co.*, 144 Iowa 1 (150 Iowa 330). Whether or not it was erroneous, however, may not be determined; for that the error, if any, was in failing to take exception to the instruction, as exacted by Section 3705-a of the Code Supplement, 1913. *Chumbley v. Courtney*, 181 Iowa 482.—*Affirmed*.

3. TRIAL: instructions: failure to except.

PRESTON, C. J., EVANS and SALINGER, JJ., concur.