Vincenzo Maurizi v. Western Coal & Mining Company, Appellant.
—11 S. W. (2d) 268.

Court en Banc, November 24, 1928.

*Edward J. White* and *Inghram D. Hook* for appellant.

*C. O. Pingry, W. H. Senner* and *Madden, Freeman & Madden* for respondent.

GANTT, J.—On September 24, 1921, plaintiff was mining coal for defendant in one of its coal mines in Crawford County, Kansas. He claims that while he and a fellow-miner were trying to put a derailed car on the track in the traveling-way of the mine a rock fell from the roof of the traveling-way onto the coal in the car, which caused it to break, and a part of the rock to strike him on the back while he was in a stooping position, forcing him to the ground and injuring him.

It is alleged in the amended petition: (a) that plaintiff is a resident of Franklin, Crawford County, Kansas; (b) that defendant is a Missouri corporation and owned and operated a mine known as Mine No. 18, located in Crawford County, Kansas; (c) that plaintiff at the time of his injuries was not working under the provisions of the Workmen's Compensation Law of the State of Kansas; (d) that on and prior to September 24, 1921, plaintiff was employed as a coal miner by defendant in its Mine No. 18; that while he was in the line of his duty, pushing a car loaded with coal out of his working place into the traveling-way of said mine so that said car could be hauled to the shaft, and while he was outside of his working place about twenty-five feet and inside the traveling-way, said car was derailed, and while he was engaged in attempting to put the car on the track, a rock fell from the roof of the traveling-way, striking and injuring him; (e) that at the time he was injured there was in full force and effect in the State of Kansas statutes relating to the health and safety of miners and the conduct of the owners and operators of mines, known as Sections 49-205 and 209, R. S. Kan. 1923; that under and by virtue of the above named statutes he has and brings this cause of action; and by said statutes and cases herein named and the authorities cited in said cases by which said statutes are construed, it was the absolute duty of the defendant to keep the traveling-ways of said mine, including the one where plaintiff

was injured, secure from falling coal, slate or rock, including the rock in question that fell upon plaintiff; that said statutes and decisions also hold that plaintiff at said time and under the conditions herein named did not assume the risk or become guilty of contributory negligence for failure to ascertain that said rock was loose and liable to fall, or his failure to keep out of its way; that the cases above referred to are Little v. Coal Co., 83 Kan. 232; Cheek v. Ry. Co., 89 Kan. 247; Baisdrenghien v. Ry. Co., 91 Kan. 730; LeRoy v. Ry. Co., 91 Kan. 548; that all of the injuries of which plaintiff complains were caused directly by and through the carelessness and negligence of defendant in failing to secure the loose rock overhead in said traveling-way from falling in and upon said traveling-way, and especially the rock which fell upon plaintiff; and that plaintiff was damaged in the sum of $50,000.

The answer is as follows: (a) general denial; (b) that the suit is for the purpose of defrauding defendant, and that the accident never occurred, or did not occur in the manner in which plaintiff claims it occurred, and plaintiff was not injured in the manner claimed; (c) that this claim is one of several claims and suits which plaintiff has brought and filed, and the injuries claimed to have been received as a result of the alleged accident herein are the same or similar to those for which plaintiff has previously filed, claimed or brought suit for permanent injuries; (d) that there was impending at the time of the alleged accident a serious strike, known as the Howat strike, which would involve many of the mines in the district in which Mine No. 18 is located and cause the miners to be unemployed; that plaintiff was aware the strike was impending and fraudulently planned this alleged injury on the eve of such strike so that he would draw compensation during the strike; (e) that plaintiff had elected to come without the provisions of the Compensation Act of Kansas, and that under and by virtue of Section 44-507, R. S. Kan. 1923, it is provided that "this act shall apply to mines without regard to number of workmen employed;" that by reason of said provisions the defendant was operating under said Compensation Act; that according to Section 44-545, R. S. Kan. 1923, it is provided that in an action to recover damages for personal injuries to an employee while engaged in the line of his duty as such in which recovery is sought upon the ground of want of due care of the employer or any officer, agent or servant of the employer, and where such employee at the time of the injury has not elected to come within the provisions of said act, the defenses of assumed risk, fellow-servant and contributory negligence are available to the employer; (f) that plaintiff assumed the risk of the rock falling on him and was guilty of contributory negligence; (g) that according to the case of Metz v. Ry. Co., 90 Kan. 463, 135 Pac. 578, where an em-

ployee proceeded without complaint and without taking measures to protect himself, he was equally at fault or sufficiently at fault to bar recovery; and according to the case of Cherokee, etc., Co. v. Britton, 3 Kan. App. 292, 45 Pac. 100, the master was only bound to exercise ordinary care for the safety of the men engaged in the mine so far as could be reasonably expected. He is not an insurer against unforeseen accidents due to the weather or unanticipated slips of slate, coal or stone from the roof or wall of the mine; and according to the case of Brooks v. Coal Co., 96 Kan. 530, where the employee furnished his own place of work or where the place is changing, the master is not bound to furnish a safe place to work; that the above are decisions of the Supreme Court of Kansas, which is the highest judicial tribunal of that State; and the statute above pleaded holds that plaintiff assumed the risk and was guilty of contributory negligence.

Reply was a general denial. Judgment was for plaintiff for $15,000, and defendant appealed.

I. Defendant contends the court was in error in refusing its instruction in the nature of a demurrer at the close of all the evidence for the following reasons:

(a) That it is entitled to the defenses of contributory negligence and assumption of risk, and that plaintiff, as a matter of law, assumed the risk and was guilty of contributory negligence.

Plaintiff pleads and the action is founded on sections of the statutes enacted in 1883 (now R. S. Kan. 1923), the pertinent parts of which are as follows:

"49-205. In order to better secure the proper ventilation of every coal mine and promote the health and safety of the persons employed therein, the owner, agent or operator shall employ a competent and practical inside overseer, to be called 'mining boss,' who shall . . . see that as the miners advance their excavations all loose coal, slate and rock overhead are carefully secured against falling in upon the traveling-ways.

"49-209. For any injury to person or property occasioned by any violation of this act, or any willful failure to comply with its provisions by any owner, lessee or operator of any coal mine or opening. a right of action against the party at default shall accrue to the party injured for the direct damage sustained thereby; . . ."

Defendant pleads sections of the Workmen's Compensation Act of Kansas. enacted in 1911, as follows:

"44-507. *Employers subject to act; mines.* It is hereby determined that the necessity for this law and the reason for its enactment, exist only with regard to employers who employ a con-

siderable number of persons. This act, therefore, shall only apply to employers by whom five or more workmen have been employed continuously for more than one month at time of the accident; *Provided, however,* that employers having less than five workmen may elect to come within the provisions of this act, in which case his employees shall be included herein, as hereinafter provided; *And provided further,* that this act shall apply to mines without regard to number of workmen employed.

"44-545. *When such defenses available.* In an action to recover damages for personal injury sustained within this State by an employee (entitled to come within the provisions of this act) while engaged in the line of his duty as such, or for death resulting from personal injury so sustained in which recovery is sought upon the ground of want of due care of the employer or of any officer, agent or servant of the employer, and where such employer at the time of the injury is operating under the provisions of this act and has not filed his election not to accept thereunder, it shall be a defense for such employer in all cases where said employee has elected not to come within the provisions of this act: (a) that the employee either expressly or impliedly assumed the risk of the hazard complained of; (b) that the injury or death was caused in whole or in part by the want of due care of the fellow-servant; (c) that said employee was guilty of contributory negligence; *Provided, however,* that none of these defenses shall be available where the injury was caused by the willful negligence of such employer, or of any managing officer, or of managing agent of said employer."

Under the Mining Law as construed by the Supreme Court of Kansas the defenses of "assumed risk and contributory negligence are not available as defenses to the charge that the defendant violated the safety provisions of the Mining Law." [Cheek v. Ry. Co., 89 Kan. 247, l. c. 267, and cases cited.] This is admitted by the defendant, but it contends that Section 44-545 of the Compensation Act repeals by implication the Mining Act to the extent of restoring to defendant said defenses. The exact question has not been ruled by the Supreme Court of Kansas. However, it has been ruled by said court that the Factory Act and the Mining Act subserve a common purpose, the same rules of law are applicable to both and that the enactment of the Compensation Act did not repeal the safety statutes of prior enactment. [Shade v. Cement Co., 93 Kan. l. c. 258; Echord v. Rush, 122 Kan. 260; Smith v. Cement Co., 94 Kan. 501.]

It is also admitted that the Compensation Act did not repeal the Factory Act, Mining Act and other safety acts of Kansas. but defendant insists this is no answer to its contention that the Compensation Act did, by implication, repeal the Mining Act to the ex-

tent of restoring to a mining defendant said defenses where the employee elected to be without the Compensation Act.

The Mining Act is a health and safety statute. As such it covers a vital field, and unless the intention is clear we must presume the Legislature did not intend to repeal any of its salutary provisions by the enactment of a later statute covering a different field. Repeals by implication are not in favor. [White v. Greenway, 263 S. W. 104.] If Section 44-545 is taken literally, the defenses of contributory negligence, fellow-servant and assumption of risk are available to the mine owner in an action for damages for personal injuries if the employee is without the Compensation Act. But this does not authorize us to so rule unless the provisions of the Mining Act and the Compensation Act are so irreconcilable that both cannot stand without repugnance to each other. Since the enactment of the Mining Act in 1883 these defenses have not been available to the mine owner in such an action. If the defenses are available, the only coercive factor left is Section 49-212, which declares a violation of the act to be a misdemeanor and punishable by a fine or imprisonment in a county jail or both such fine and imprisonment. Therefore, such a ruling would so neutralize the coercive side of the act as to well-nigh destroy its vitality, and would, in effect, be contrary to the decisions of the Supreme Court of Kansas holding that the Compensation Act did not repeal the safety statutes.

As stated, the direct question has not been ruled by the Supreme Court of Kansas. However, in Shade v. Cement Co., 93 Kan. l. c. 260, the court had under consideration the constitutionality of the Compensation Act, and there said:

"It seems unnecessary, now that the validity of such laws has been so generally maintained, to review the many adjudicated cases, and restate in detail the well-settled principles upon which they are based. Briefly, it may be said that the operation of the system of compensation provided by the statute rests upon the free consent of employer and employee, given in the manner provided by the act, *Without such consent on his part the employee retains all his remedies under common and statutory law. It is a matter of election.*"

The defenses are available to a mine owner in all actions not founded on a violation of the Mining Act if the miner is without the Compensation Act. For instance, the defenses are available under such circumstances in an action for injury to a miner by rock falling from the roof of the room in which he is mining.

If a mine owner could be without the Compensation Act and was, in fact, without said act, he would not be denied the defenses in question by the provisions of said act, for those defenses had been denied him for years by the Mining Act in all cases of injury to a miner as a direct result of the owner's violation of said act. So, the

owner lost no defenses under the circumstances by being within the Compensation Act. As stated, he does not lose these defenses against a miner without the act if the miner's injury is not the result of the owner's violation of the Mining Act. The availability of these defenses to the owner under such circumstances furnishes ample inducement to the miner to come within the Compensation Act. Indeed, plaintiff had been within the act. Therefore, there was no reason for the lawmakers to provide defenses for the owners they did not have at the time and prior to the enactment of said act. The defenses mentioned in Section 44-545 were only the defenses available to the owner and operator of mines prior to the enactment of the Compensation Act. Thus construed the sections involved are given full force and effect and in no way conflict with the health and safety provisions of the Mining Act.

Appellant directs our attention to the following cases: Gildersleeve v. Newton Steel Co., 142 N. E. (Ohio) 678; Smith v. Cement Co., 94 Kan. 501; Bjork v. Bobbin & Shuttle Co., 111 Atl. (N. H.) 284; Karny v. N. M. I. Co., 160 Wis. 316; Balen v. Colfax Cons. Coal Co., 183 Iowa, 1198; Swanson v. Georgia Casualty Co., 287 S. W. 455; Metz v. Ry. Co., 90 Kan. 463, 135 Pac. 578; Brooks v. Coal Co., 96 Kan. 530; Cherokee Co. v. Briton, 3 Kan. App. 292, 145 Pac. 100.

The Bjork, Karny, Swanson and Metz cases do not rest on a health and safety statute and are no aid in the construction of the sections involved.

In the Gildersleeve case plaintiff was injured while in the employ of defendant. He claimed that under the Norris Act the defenses of contributory negligence and fellow-servant were denied defendant. The court ruled the defenses were available for the reason the Compensation Act of Ohio by implication repealed that part of the Norris Act denying to employers said defenses. The Norris Act is a personal injury statute and not a health and safety statute. In addition, the provisions of the Constitution of Ohio authorizing the Compensation Act saves to the employee his right of action under the health and safety statutes. [Sec. 35, Art. 2, Constitution of Ohio, 1912.]

In the Smith case defendant contended the Compensation Act repealed the Factory Act. In discussing the general effect of the Compensation Act, the court incidentally stated that ''where one accepts and the other rejects it [Compensation Act], certain enumerated consequences follow.'' From this it is argued the Supreme Court of Kansas inferentially ruled that when an employee rejects the act, even though the employer had violated a provision of a safety statute, the defenses of contributory negligence, fellow-servant and assumption of risk are restored to the employer. We do not so understand the decision. As stated, the court was discussing the general effect

of the act and not the relation of the act to the health and safety statutes.

In the Balen case, the plaintiff, a coal miner, was injured in a mine. He had elected to be within and the defendant had elected to be without the Compensation Act. The defendant contended the Compensation Act provided an exclusive remedy for the plaintiff. The court ruled otherwise.

In the Brooks case the action did not rest on a violation of the Mining Act because the miner was injured in his mining room, and the defendant was entitled to the defenses of contributory negligence, assumption of risk and fellow-servant.

The Britton case was ruled by an inferior court of Kansas and is not the law of that State. The cases are not in point.

(b)   Defendant contends the Mining Act is not a substantive law but a mere rule of evidence, and the proof of plaintiff's cause of action should be governed by the *lex fori* and not by the *lex loci domicilii*, and if so proved the defenses of assumption of risk and contributory negligence are available, and under the evidence the plaintiff, as a matter of law, assumed the risk and was guilty of contributory negligence.

In the case of Hiatt v. Ry. Co., 308 Mo. 77, 271 S. W. 806, we had under consideration an Arkansas statute, as follows: "All railroads which are now or may be hereafter built and operated in whole or in part in this state shall be *responsible* for all damages to persons and property done or caused by the running of trains in this state." Speaking through GRAVES, J., we ruled this statute to be a substantive law and, in doing so, said: "We rule that the statute as construed by the Arkansas Supreme Court (which construction becomes a part and parcel of the statute so far as Missouri courts are concerned in trying cases under it), gives to plaintiff a substantial and substantive right and is not a procedural law at all." [Mosely v. Fuel Co., 281 S. W. 762.]   Defendant admits the Arkansas statute imposed an absolute liability, but insists the Kansas Mining Act in providing "that a right of action against the party in default *shall accrue* to the party injured" as the result of a violation of said act does not give to plaintiff a substantive right, for the reason it "merely creates a cause of action." In so arguing defendant concedes the Mining Act is a substantive law. All of the authorities hold that "a substantive law is that part of the law which creates, defines and regulates rights as opposed to adjective or remedial law, which prescribes the method of enforcing the rights or obtaining redress for their invasion. [36 C. J. 963; 1 Words and Phrases, 101.]   The Mining Act is a substantive law and has been so ruled by the Supreme Court of Kansas. [Little v. Coal Co., 83 Kan. 232; Cheek v. Ry. Co., 89 Kan. 247; Baisdrenghien v. Ry. Co., 91 Kan. 730; LeRoy v. Ry. Co., 91 Kan. 548.]

Attention is directed to the case of Jones v. Ry. Co., 80 Minn. 488. In that case a brakeman sued for injuries suffered in Wisconsin. A statute was there in force providing that for an injury to employees caused by a defect in the rolling stock, etc., of a railroad, if such defect could have been discovered by reasonable care, then on proof of such defect a presumption of knowledge followed. No such rule of evidence is provided in the Mining Act of Kansas, and the case is not in point.

The statute upon which the instant case rests being a substantive law, it is our duty to enforce its provisions in any case predicated thereon. [Wojtylak v. Coal Co., 188 Mo. 260, l. c. 295.] This conclusion makes it unnecessary to give further attention to the authorities cited by defendant to the effect that the proof of a cause of action is always governed by the *lex fori* and not by the *lex loci domicilii*.

(c) Defendant contends the petition does not allege facts sufficient to constitute a cause of action, in that it contains no allegation of actual or constructive notice of the defective condition of the roof, contains no allegation of negligence, and there was no proof of negligence.

The contention that plaintiff should have pleaded either actual or constructive notice of the condition of the roof is ruled by the Supreme Court of Kansas in Little v. Coal Co., supra, as follows:

"Where an employee at work in a mine was injured by the falling of a loose rock from the roof of an entry the employer's liability depended, not upon whether it had actual or constructive notice that the rock was loose, but upon whether it had failed to perform its statutory duty to secure loose rock overhead from falling in upon the traveling-ways."

The court further said:

"The demurrer to the petition, the demurrer to the evidence, the instructions requested and refused, the objection to the instructions given and the motion for judgment on the findings are predicated upon the theory that the plaintiff could not recover without alleging and proving that the defendant either had actual notice that the rock in the roof of the entry was loose or that it was in that condition for sufficient length of time to charge the defendant with constructive notice thereof. If this were an action to recover for injuries caused by the omission of a common-law duty of the master the defendant's theory would apply; but the action is based upon a duty which the statute imposes upon the defendant to keep careful watch 'to see that as the miners advance their excavations all loose coal, slate and rock overhead are carefully secured against falling in upon the traveling-ways.'

"The defendant, therefore, cannot escape liability for its failure to perform the duty on the ground that it did not know that the rock was likely to fall; nor is it any answer to say that because plaintiff (who was a miner of long experience) testified that he had not noticed that the particular rock which fell upon him was loose before it fell he was guilty of contributory negligence, or that for the same reason the defendant could not have known the condition of the entry. No duty was imposed upon the plaintiff to keep careful watch to see that loose rock did not fall upon him. He had the right to rely upon the performance by the master of the statutory duty to inspect and keep the roofs of the entries propped to prevent stone from falling."

To the same effect: Cheek v. Ry. Co., 89 Kan. 247, where the court had under consideration the final clause of the Mining Act with reference to the maintenance of boreholes when the mining operations are conducted in dangerous proximity to an abandoned mine. The defendant raised the question of notice and the question that by assigning an employee to the duty of complying with the statute it had discharged its obligations.

In the instant case defendant denies liability because it had no notice, actual or constructive, that the rock was loose, and that it performed its duty by assigning an employee to the duty of inspection.

In the Cheek case the court said:

"The defendant was obliged, as a matter of law, to know the boundaries of its mines and the thickness of the wall or coal between them. . . . Whenever the law requires the employer himself to a precautionary measure for the safety of his employees, it is not enough that he make provision for the performance of the act. The precautionary act itself must be performed."

It is further ruled by said court that the inability of the defendant to anticipate the injury constitutes no defense for a breach of statutory duty. [Caspar v. Lewin, 82 Kan. 604; Baisdrenghein v. Ry. Co., 91 Kan. 730.] In the last mentioned case, the court said:

"Any omission of this requirement, which, by diligent compliance therewith would have obviated an injury to a miner, renders the owner or operator liable in damages. The law to this extent entirely shifts the risks of the employment from the laborer to the employer. Care for his own safety may impel a miner to watch for treacherous mine roofs, but he is not legally required to do so, but may rely upon the presumption that the mining boss or overseer has fully performed his duty."

To the same effect: LeRoy v. Ry. Co., 91 Kan. 548; Quapaw Mining Co. v. Cogburn, 190 Pac. (Okla.) 416, l. c. 420.

Thus it appears that plaintiff was not required to plead either actual or constructive notice.

It is alleged in the petition "that all of the injuries sustained by plaintiff were caused directly by and through the carelessness and negligence of the defendant in failing to secure the loose coal, slate and rock overhead in said traveling-way from falling in and upon said traveling-way, and especially the rock which fell on the plaintiff, as aforesaid, as required by said statutes, and in direct violation thereof."

The defendant was charged with negligence, and a failure of defendant to perform its mandatory duty to safely secure rock in the traveling-way from falling was negligence.

Defendant directs our attention to cases cited by plaintiff, as follows: LeRoy v. Ry. Co., 91 Kan. 548; Baisdrenghien v. Ry. Co., 91 Kan. 730; Little v. Coal Co., 83 Kan. 232, 234. In these cases there was evidence either that props had been requested and denied, or that there was no timbering and the roof was bad, or that defendant had notice that the roof needed props. From this it is argued that there should have been proof in the instant case of a failure to perform some such duty. We do not so understand those decisions. The evidence referred to appeared incidentally in the trial of the cases.

(d) Defendant contends the evidence for plaintiff as to the manner of his injury is inconsistent with the physical facts. The evidence tends to show that plaintiff and Burt Guisitto, a fellow-miner, were attempting to put a derailed car on the track in the traveling-way of the mine; that Guisitto succeeded in putting the front wheels on the track, and plaintiff, with a mine prop and in a stooping position at the rear of the car, was attempting to put the hind wheels on the track; that while in this position a rock fell from the roof on the coal in the car which caused it to break and a piece of the rock to fall on plaintiff's back, forcing him to the ground and injuring him; that the car was about twenty-three inches high, and the coal extended twelve inches above the top of the car.

The contention is plaintiff's back was higher than the coal and it was physically impossible for the rock to have struck the coal before it struck plaintiff. Of course, if plaintiff only bent his body this might be true, but if he bent his knees the coal might be higher than his back. The plaintiff and Guisitto testified plaintiff's body was below the level of the coal. On cross-examination the position of plaintiff at the time the rock fell was demonstrated by counsel for defendant to the court and jury. The contention is without merit, for plaintiff could have been injured as narrated. The Kansas City Court of Appeals ruled as follows: "Before a judgment may be reversed upon the assumption that the physical facts do not warrant the same, it must unmistakably appear that it was impossible for the

results to have followed the facts and circumstances in evidence.'' [McHatton v. Kansas City Rys., 246 S. W. 651; Titus v. Delano, 210 S. W. 44; Pelster v. Boiler Co., 268 S. W. 890.] The court ruled correctly in refusing the instruction in the nature of a demurrer, and the contentions are overruled.

II. On the *voir dire* examination of the panel of eighteen jurors counsel for plaintiff inquired if either was connected with the United States Fidelity & Guaranty Company or Thomas McGee & Son, agents of that company in Kansas City. Defendant objected to the inquiries as prejudicial on the ground that said insurance company was not the defendant, and moved the discharge of the jury. Thereupon, the court and counsel for plaintiff, out of the hearing of the jury, inquired of counsel for defendant if he represented said company and if it was interested in the case. He answered that he was attorney for the company, but did not answer whether he represented said company in the case, or whether said company was interested in the case.

It is contended no foundation was laid for the questions outside of the presence of the jury, or at any other time. No such assignment of error is found in the motion for new trial, and this was not the objection made to the question. Counsel did not claim the insurance company was not interested in the defense and did not claim that McGee & Son were not the agent of the company, and does not so claim at this time. The contention amounts to a claim of error if the members of the panel are so questioned before counsel for plaintiff inquires of counsel for defendant, out of the hearing of the jury, whether or not the insurance company is interested in the defense. If the insurance company is interested, the defendant cannot be prejudiced if plaintiff's counsel never makes such inquiry. We know of no rule requiring a foundation for the examination of members of the panel as to their qualifications to serve as jurors. The foundation is the right of a litigant to know the relation of the members of the panel to the parties and those interested in the result of the case. Counsel for plaintiff is not required to prove that an insurance company, or insurance agency, is interested before inquiring of the members if they are connected with either. He is presumed to be acting in good faith when he makes the inquiries. If it appears from the record that counsel had reasonable cause to believe an insurance company, or an insurance agency, was interested, and that he acted in good faith in making the inquiries, the sound discretion of the court in controlling and directing the examination will be sustained. On the other hand, if it should appear from the

record that counsel has abused the privilege, and the inquiries were not for the purpose of being able to intelligently make peremptory challenges, the action of the court in permitting the inquiries would not be sustained. The court should require counsel for plaintiff to inquire of defendant's counsel, out of the hearing of the jury, whether or not the insurance company is interested in the case, and, if so, the name of the company. However, it does not follow that a failure to do so would result in convicting the court of error.

In this case counsel for defendant evaded the questions of the court and of counsel for plaintiff. This considered, we think the trial court could assume the insurance company was interested. If the members of the panels are examined as to their relations to an insurance company, a further inquiry as to their connection with any number of insurance agencies could not prejudice defendant. Defendant did not object to the inquiry as to the relations of the members to McGee & Son for the reason said agency did not represent the insurance company, but made the general objection that the inquiry was prejudicial. A juror admitted his acquaintance with McGee & Son, that he carried liability insurance with them and that he might be prejudiced if they were interested in the result of the case.

Attention is directed to the case of Chambers v. Kennedy, 274 S. W. 726. In that case similar inquiries were made as to the Continental Casualty Company, or any other insurance company. Defendant objected to the inquiries as prejudicial and moved the discharge of the jury. It does not appear that the Continental Casualty Company, or other insurance company, was interested in the defense, nor that counsel for plaintiff had reasonable cause to so believe. The case may have been ruled correctly on the facts, but it does not sustain defendant's contention on this assignment. The trial court did not abuse its discretion on the *voir dire* examination of the panel, and the contention is overruled.

III.   Defendant charges the plaintiff was permitted to explain his conviction of a crime. On cross-examination he admitted he had twice pleaded guilty to having in his possession "white mule." Counsel for defendant insisted upon characterizing the offense as bootlegging. Plaintiff denied he was guilty of bootlegging, and when he did so the only objection made was: "I object to a long-winded explanation." We discover no long-winded explanation or attempt to explain the conviction of a crime.

Attention is directed to State v. Jones, 249 Mo. 80, 100, and State v. Kimmell, 156 Mo. App. 461, 137 S. W. 329. These cases dealt

with facts altogether different and are not in point. The contention is overruled.

IV.  Defendant charges the court with error in permitting Dr. Twyman to answer a hypothetical question as to the causal connection between plaintiff's injury, as developed by his testimony, and the development thereafter of a perinephritic abscess. Defendant contends certain material facts were omitted. No such objection was made to the question. The objections made are as follows:

"CAPTAIN HOOK: I, object at this time to the question as an improper hypothetical question containing many elements which are absolutely unnecessary, in order to bring the whole matter to the jury in an illegal argument to the jury.

"CAPTAIN HOOK: Now, I renew my objection, saying the recitation of about nine-tenths or the greater part of the question was unnecessary and move that it be stricken out and the jury instructed to disregard it."

It will be noted that at the trial it was objected that too many facts were set out in the question, whereas it is now charged that material facts were omitted. The trial court was not given an opportunity to rule on the objection now made, and we cannot convict it of error. The contention is overruled.

V.  Defendant contends the court should have given its Instructions B on assumption of risk, and C and 6-a and 8 on contributory negligence.

It is insisted B should have been given for the reason the court gave no instruction on assumption of risk. We have ruled the defenses of contributory negligence and assumption of risk were not available. Even if the defense of assumption of risk were available, the plaintiff would not assume the risk of defendant violating the Mining Act. If all the defenses were available, we think the instructions are erroneous, but a discussion of this question is unnecessary. In addition, plaintiff was under no duty to inspect the roof in the traveling-way. He could assume that defendant had discharged its statutory duty to secure the rock from falling. There was no evidence tending to show contributory negligence, and the contention is overruled.

VI.  Having disposed of defendant's contention that the defenses of contributory negligence and assumption of risk should have been submitted to the jury, we next consider its contention that these defenses should not have been submitted to the jury.

It is claimed that plaintiff's Instruction 1 is erroneous for the reason it contains this proviso: "Unless you find that the falling of the rock was one of the assumptions of risk of plaintiff's employment, or that he was guilty of contributory negligence to his own injury (if any)." This instruction predicates recovery upon the theory of the petition, but defendant claims this proviso makes the instruction broader than the case made by the petition. We are unable to follow this reasoning of the defendant. The proviso in no way broadens the case made by the petition. It only submits to the jury the affirmative defenses of defendant's answer. In doing so the plaintiff assumed an unnecessary burden, and the defendant could not have been prejudiced thereby. If the submission of these affirmative defenses in plaintiff's instruction was erroneous, the defendant is in no position to complain, for it invited the court to submit these issues to the jury by tendering instructions, one or more of which were given. The contention is overruled.

VII. Defendant contends plaintiff's counsel was guilty of prejudicial argument. Plaintiff rejoins that defendant's counsel declared war before the trial and waged war during the trial; that his argument was based on facts and circumstances in evidence and was in reply to the argument of counsel for defendant.

Plaintiff's counsel directs attention to the record, as follows:

(a) Just before the commencement of the trial defendant filed an amended answer, alleging, for the first time, a charge of fraud in that the Howat strike was impending which would involve the employees of the mine; that plaintiff was aware of the fact that a strike was impending, and that he fraudulently planned this alleged injury on the eve of such strike so that he would draw compensation during the strike. There is no evidence to sustain this charge.

(b) In his opening argument to the jury Captain Hook, counsel for defendant, mentioned the issue of fraud as being intertwined with the other defenses and spoke of the Howat strike that was coming on at the time of plaintiff's alleged injury, describing it as being a contest between Governor Allen and Howat, the leader of the miners. He then stated that plaintiff was a slacker in the service of this country. At this time counsel for plaintiff, out of the hearing of the jury, moved that the jury be discharged for the reason that said statements were highly prejudicial, and plaintiff could not have a fair and impartial trial. The motion was overruled.

(c) Three days before the trial defendant's attorney served notice on plaintiff's counsel to produce all records, documents and papers pertaining to plaintiff's service in the U. S. Army during the war, his discharge and arrest as a slacker following the war, and

that in default of such production he would introduce secondary evidence of such arrest and of plaintiff's acceptance of a "blue discharge." There is no evidence that plaintiff was in the army. He testified he registered in 1917; that his number was 240; that after registering he went to Illinois to visit his brother; that while there he worked in a mine, called Tovey, and returned to the Kansas mines in 1918; that before leaving for Illinois he reported to the authorities and gave the address of his sister in Franklin, Kansas, who would know where he could be found should he be drawn for service; that when he returned to Kansas he continued to work in the mines until he was injured; that he was arrested by Sheriff Gould of Crawford County, Kansas, as a slacker in January, 1922, after he made this claim for damages, and was taken to Leavenworth by a deputy sheriff and delivered to the army officers; that the arrest was after the operation for the injury to his kidney, and the wound was open and draining when he arrived at Leavenworth; that the army officer said: "You ought to be ashamed to bring that boy here in this condition." They sent him to a hospital, and on his discharge he was given a "paper" to the sheriff releasing him. During the cross-examination of plaintiff he testified:

"Q. Now, Maurizi, you were a slacker in the World War, weren't you? A. Who said I be a slacker. You say I be a slacker.

"Q. Yes, I said you were. A. I know you said I am a slacker, the company make me arrest, your company make me arrest, you remember that day I came to your office, one year this month, you told me the company make me arrest at time being a slacker.

"Q. When were you up in my office? A. Last year this month, you remember I got the wife and my baby in the office.

"Q. You came up there and wanted to know when your case was coming up? A. No, I asked you, told you, 'What do you want to do with the case?' if you wanted to settle the case or not, that is the time you told me that way, I never be a slacker at all."

This should have ended the examination on the subject. It may be counsel for defendant was authorized to make the inquiry; if so, the defendant was concluded by plaintiff's answer, and the court should not have permitted further examination into this collateral issue. [Muller v. St. Louis Hospital Assn., 73 Mo. 242; State v. Long, 201 Mo. 664, l. c. 674; State v. Potts, 239 Mo. 403, l. c. 413.]

The examination continued, and the plaintiff was asked the following questions:

"Q. Did you have that hole in your back during the war?" (Referring to the wound from the operation.)

"Q. You were posted in the Pittsburg papers as a slacker?" (Later an issue of said paper of the date of January 26, 1922, was offered in evidence and excluded.)

"Q. Well, the majority of the mining camp went to war?

"Q. You knew we were having war?" (Plaintiff testified he wanted to enlist and defendant's boss advised him to remain in the mines and dig coal for the good of the country.)

Captain Hook then asked:

"Q. So you took his advice and stayed there? A. I asked the boss this.

"Q. You never did get there? A. Get what?

"Q. You never did get into the army, did you?"

(d) Plaintiff testified through an interpreter. When plaintiff was sworn as a witness the court directed the interpreter to ask if he understood the nature of an oath. The plaintiff answered he did. Thereupon, Captain Hook directed the interpreter to ask plaintiff if he is an atheist. Plaintiff answered he was not.

(e) Plaintiff admitted that he pleaded guilty twice to possessing "white mule," but denied that he had ever sold liquor or engaged in bootlegging. Defendant's counsel referred to him as a bootlegger.

(f) In the early part of 1917 plaintiff worked in a coal mine near Springfield, Illinois. Of this defendant's counsel asked the following questions:

"Q. You worked at Herrin? A. Herrin?

"Q. Herrin, Illinois, in that district? A. Well, I don't know the district, but what we called Tovey No. 86 is where I worked."

(g) Defendant, over the objection of plaintiff, asked about his naturalization papers. Plaintiff stated he had a declaration of intention somewhere, received it over a year ago, but did not have it with him. Later, plaintiff sent for the papers and offered them in evidence. Thereupon, counsel for defendant asked plaintiff the following questions:

"Q. Did your lawyer tell you you had better take this out in view of this lawsuit. A. No, sir.

"Q. Had Mr. Pingry told you you had better take that out? A. No, sir."

Counsel demanded the papers, and when produced proceeded to discredit plaintiff's act and charged him with bad faith in his application to become an American citizen.

The court gave an instruction on the rights of plaintiff notwithstanding his foreign birth, but refused an instruction withdrawing the slacker charge.

The above does not cover all the criticisms by plaintiff of the conduct of defendant's counsel. However, it will give an idea of it.

402

With this setting we will consider defendant's assignments of error relating to the closing argument of plaintiff's counsel.

1. Mr. Madden, counsel for plaintiff, in his opening argument, stated that plaintiff sued for $50,000 damages. Objection was made and overruled. Defendant charges error and directs attention to Vaughan v. Magee, 218 Fed. l. c. 631. It may be the rule in the Federal courts that plaintiff is not permitted to refer to the amount of damages claimed but it is not the rule in this State.

2. The argument of counsel for defendant was not reported—that of counsel for plaintiff was. It appears from the record that the closing argument of plaintiff's counsel up to the time of the first interruption was in answer to Captain Hook's discussion of American citizenship, and the charge that plaintiff was a slacker. At this time counsel for plaintiff stated that plaintiff came back to the mines in 1918; that the company knew he was there in 1918, 1919, 1920 and 1919, and up until he was injured, and that he was not arrested until he filed a claim against defendant. Thereupon, counsel for defendant displayed the rejected copy of the Pittsburg Daily Headlight, and said: "Just a moment—you would not let this go in." This was prejudicial conduct on the part of defendant's attorney. [Levels v. Railroad, 196 Mo. 606, l. c. 622.]

3. An examination of the closing argument of counsel for plaintiff discloses that his argument referring to American citizenship, slacker and that "God is not down in those camps" was in reply to the argument of counsel for defendant. In referring to those matters counsel for plaintiff mentioned that counsel for defendant had spoken of American citizenship, slacker and that God was down in those camps (or words to that effect). Counsel for defendant in objecting to this argument did not object for the reason that it was not in reply to his argument, but objected for the reason that the argument was prejudicial.

4. Defendant charges that counsel for plaintiff inferentially argued that defendant caused the arrest of plaintiff for being a slacker after he had made claim for damages. It is insisted there is no evidence to sustain the argument. The record discloses substantial evidence to sustain the argument.

In addition, it appears that Sheriff Gould, who arrested plaintiff as a slacker, had been assisting defendant in interviewing witnesses

and gathering testimony. Thus, it appears there was ample evidence to sustain this argument.

In this connection it should be said that plaintiff's name might have been listed in the report of the officers and the Pittsburg paper as a slacker; if so, it seems to have been a mistake.

5. Defendant next contends that counsel for plaintiff made an odious comparison between Captain Hook and the plaintiff when he said: "Hook never worked with his knees, he never went down on his side and down in the coal mine as this boy did," and (addressing Captain Hook) "it would have made you a little human but you are not." Evidently this had reference to Captain Hook's cross-examination of the plaintiff as to his body being above the level of the coal in the car and not below the level of the coal in the car when the rock fell from the roof. It appears that Captain Hook used himself in an effort to demonstrate before the jury that it was physically impossible for plaintiff's back to have been below the level of the coal in the car. Counsel for plaintiff contended that it was not physically impossible if the knees were bent. It was with reference to this demonstration that counsel for plaintiff made the statement above set forth. Counsel should not have referred to Captain Hook as being inhuman. This was improper, but we do not think it was prejudicial to defendant.

6. When counsel for plaintiff was closing his argument counsel for defendant said: "The time is up." Counsel for plaintiff continued the argument, and counsel for defendant again stated: "The time is up. I would thank you to stop as the time is up." Counsel for plaintiff replied: "I thank you for your grandmother's style that you have used throughout the case." Counsel for defendant objected to the remark of counsel for plaintiff and moved that the jury be discharged. The court overruled the motion and·objection and stated, "The court governs the time." Counsel for defendant objected to the remarks of the court and moved that the jury be discharged. It must be admitted that the court has the control and direction of the trial, including the argument. If the time for argument allotted to plaintiff had expired, counsel for defendant should have directed his remarks to the court. The reference to counsel's style as "grandmother's style" was improper but we do not think, prejudicial.

404

The record tends to show that counsel for defendant was extending himself to convince the jury that plaintiff was a foreigner, slacker, striker and fraud. The learned trial judge heard the argument of counsel for defendant, had a view of the whole trial and was in a position to pass judgment on the argument of counsel for plaintiff. He approved the argument of counsel for plaintiff as a reply to the argument of counsel for defendant by overruling the objections of defendant. We cannot say that his rulings were an abuse of discretion. The contentions are overruled.

VIII. Defendant contends the verdict is excessive. There was evidence tending to show that plaintiff at the time of his injury was twenty-nine years of age and earning an average wage of $200 per month.

It will not be necessary to detail the testimony of the physicians, plaintiff's experience in the hospital, or the evidence disclosing plaintiff's condition before and after he underwent the operation.

The evidence tends to show that about twenty days after the injury plaintiff went to the Springs at Claremore, Oklahoma, and remained there nine days. From there he went to Tulsa, Oklahoma, and remained two days, during which time he was examined by physicians and then taken to a hospital at Sands Springs, about eight miles from Tulsa. An operation was performed and disclosed a perinephritic abscess around the kidney. The incision was eighteen inches long, and when the kidney cavity was opened there was a gush of blood clot, pus and corruption, indicating a septic and traumatic infection around the kidney. Pus continued to discharge from the kidney cavity until the following January. After the injury he was up and down in bed at home and the Springs, was in bed at Tulsa, was confined to the hospital four weeks and was up and down in bed at home after returning from the hospital. He was compelled to use a cane and continued to do so for eight months. Thereafter he tried to discontinue the use of the cane, but was forced to resort to it again and was using it at the time of the trial. Shortly after the injury he became affected with septic fever which was relieved by the operation. His right side was injured, including the spine, sacro-iliac joint and right leg, and he suffers and will continue to suffer from limitation of motion throughout the entire right side, hip, limb and back. He suffered severe pain and will continue to so suffer. He has been unable to perform labor since the injury, is permanently disabled, and this condition is the direct result of the injury.

There was evidence for defendant tending to minimize plaintiff's injuries, but the issue was for the jury. In this connection defendant contends the amount of damages recoverable is limited by the petition and the instruction on damages to temporary disability. It is alleged in the petition that plaintiff is permanently incapacitated from performing labor and had been permanently and totally deprived of his earning powers, and the instruction on the measure of damages does not limit the recovery for disabilities. The contention is overruled.

It follows the judgment should be affirmed. It is so ordered.

PER CURIAM:—Divisional opinion modified, and as modified, adopted by Court en Banc. All of the judges concur.